Anthony T. LEE, et al., Plaintiffs,

United States of America, Plaintiff-Intervenor and Amicus Curiae,

National Education Association, Inc., Plaintiff-Intervenor-Appellant,

v.

RUSSELL COUNTY BOARD OF EDUCATION, et al., Defendants-Appellees.

Edward G. BARNES, Plaintiff-Appellant,

Chanchal Narang, Plaintiff-Intervenor-Appellant,

v.

RUSSELL COUNTY BOARD OF EDUCATION OF RUSSELL COUNTY, ALABAMA, et al., Defendants-Appellees.

No. 80–7761.

United States Court of Appeals, Eleventh Circuit.

Sept. 1, 1982.

Gray, Seay & Langford, W. Troy Massey, Montgomery, Ala., for NEA, Crenshaw and Walker.

George Beck, Montgomery, Ala., Jeremiah A. Collins, Gary L. Sasso, Washington, D. C., for Barnes and Narang.

Ronald G. Davenport, Phenix City, Ala., for defendants-appellees.

Before GODBOLD, Chief Judge, MERRITT * and HENDERSON, Circuit Judges.

GODBOLD, Chief Judge:

This appeal in a school desegregation case originated as a motion for further relief made by plaintiff National Education Association. NEA contended that the Russell County [Alabama] Board of Education's decision not to reemploy untenured black teachers Leon Crenshaw and Margie Walker violated 42 U.S.C. § 1983 and violated a prior court order in the case to make employment decisions without regard to race.[1] Plaintiffs Dr. Edward G. Barnes and Chanchal Narang intervened, Narang contending that she was not reemployed because of her race and Barnes contending that he was not reemployed in retaliation for his support of the other three. After a bench trial the district court denied relief. We remand for further consideration, finding that the district court applied an incorrect legal analysis to the facts and that its findings of fact were inadequate.

### I. Facts

This controversy arose at the end of 1978–79 school year when the Russell County School Board decided by a three to two vote not to reemploy Crenshaw, Walker, and Narang, untenured teachers at Chavala High School, and Barnes, their principal. Chavala High School consisted of grades 7–12[2] and its student racial make-up was approximately 60% black and 40% white.

Crenshaw, a black male, taught science in the junior high grades for two years and was also athletic director and football coach in the senior high grades for those two years. Walker, a black female, taught 11th and 12th grade English for three years.

Narang, a female [Asiatic] Indian, taught reading in the junior high grades for two years. Barnes, a white male, was principal for one year. All three teachers received satisfactory evaluations throughout their teaching careers and received a recommendation for reemployment by their principal, Barnes, and by Warren Richards, the county superintendent of education, at the end of the 1978–79 school year. The day before the school board met to make its decision the three members who eventually constituted the majority called Barnes in separate phone conversations inquiring whether he continued to stand by his recommendations, which he did. The following day the board made its decision not to reemploy the plaintiffs, and at the same time it voted not to reemploy three white teachers at Chavala. These other three teachers had already declared their intentions not to return the following year, however. Crenshaw was replaced by a white football coach. A black man was named as a temporary principal. The evidence is not clear, though, concerning the race of the replacements for Walker and Narang and the race of the permanent principal.

Principal Barnes, who had several years of experience in school desegregation and civil rights matters, testified that in his opinion there was no valid administrative reason not to reemploy Crenshaw, Walker and Narang and that race was definitely a factor in the school board's decisions. Richards, who had been superintendent of education in Russell County for almost two decades and had worked with the then current members of the school board for several years, testified that there was no administrative reason not to reemploy the three plaintiff teachers and principal Barnes and that race was a factor in the decisions. The two members of the school board who voted

---

* Honorable Gilbert S. Merritt, U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. No party contests the NEA's ability to assert the rights of Crenshaw and Walker, who are not named parties in this action. This has been done in prior similar cases. *See, e.g., Lee v. Washington County Board of Education,* 625 F.2d 1235 (5th Cir. 1980). For convenience we will refer to Crenshaw and Walker as plaintiffs.

2. There is no Chavala Junior High School as a separate institution. The parties sometimes referred to Chavala Junior High, however, as a designation of the junior high grades at Chavala High School.

in the minority testified that they saw no administrative reason for not reemploying plaintiffs. Barnes testified that shortly after he began as principal in 1978, Mr. Pugh, a member of the school board who voted with the majority, told him that he was concerned about getting a greater "white presence" in the junior high grades and in all grades of the English Department and said "you play ball with us, and we'll work with you." Narang and Crenshaw taught in the junior high grades and Walker taught English. Barnes also testified that later during the year when he hired a new English teacher, Pugh was pleased that she was white and stated "it's a good step," referring to her race. According to Barnes, during the same conversation in which Pugh mentioned getting a greater "white presence" he also discussed many teachers that he felt had problems. Plaintiffs Crenshaw, Walker, and Narang were included, and only one white teacher was discussed. Pugh asked Barnes to "build files" on those teachers discussed. Barnes testified to similar conversations with the other two school board members who voted with the majority. Superintendent Richards testified that there were discussions at school board meetings from time to time about "build[ing] cases, tak[ing] notes, go[ing] unannounced, listen[ing] in on the public address system . . . so that the teacher would not know they were listening." Richards stated that "generally the context of the conversation led you to believe they were talking about black teachers more than anyone else." Crenshaw testified that the principal prior to Dr. Barnes asked Crenshaw to move down to coach of the junior high grades in order to stop white flight because white students would not play football for a black coach.

The three members of the school board who voted not to reemploy plaintiffs each testified that race was not a factor in his decision and denied much of plaintiffs' evidence just summarized. They gave as their reasons for nonrenewal the following:

Crenshaw: Complaints about his leaving his classes unattended and not being on campus, and about his work with athletes.

Walker: Complaints about poor spelling and grammar.

Narang: Complaints about the inability of her students to understand her.

Barnes: He was influenced by teachers, "was not his own man," and "was not the leader we needed."

There was evidence introduced supporting these reasons and other evidence contradicting the validity of these complaints.

## II. The district court's opinion

At the end of the two and one-half day trial the court ruled from the bench that plaintiffs had not met their burden of proving by a preponderance of the evidence that their nonrenewals were unconstitutional.[3] The court outlined the four-part test for a prima facie case of racially motivated discharge derived from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and it discussed the nature of the necessary rebuttal to a prima facie case. The court did not indicate whether a prima facie case had been established or whether it believed plaintiffs' evidence but instead focused its analysis on the rebuttal evidence, that is, the school board's articulated reasons for nonrenewal. The court stated that there is broad discretion in the school board in making employment decisions concerning nontenured teachers and that "there doesn't have to be any substantial reason" for nonrenewal, nor is the board "required to prove total absence of any discriminatory motive."[4] The court further found that in each case the board members had stated valid, nondiscriminatory reasons not shown to be pretextual and therefore no plaintiff had met the burden of proving by a preponderance of the evidence that he or she was unconstitutionally

3. The court subsequently issued written findings and conclusions with no substantial deviations from its bench ruling except for that discussed in note 5 *infra*.

4. The latter ruling was not reiterated in the written findings and conclusions.

nonrenewed. After a motion for definite findings of fact the court gave as the "substantial and motivating factors" behind the board's decision:

Crenshaw: Failure to properly account for school funds in his custody and conduct that caused substantial bad publicity about school matters.

Walker: Difficulty in use of proper grammar.

Narang: Difficulty in making herself understood because of her foreign accent.

Barnes: Failure to conduct adequate investigations of complaints about school matters.

### III. The legal analysis

The action was prosecuted under § 1983 as to Crenshaw, Walker, and Narang on the theory that they were discriminated against because of their race in violation of the Fourteenth Amendment, and as to Barnes on the theory that he was discriminated against on the basis of his exercise of First Amendment rights.[5]

■ Focusing first on the race discrimination charge, it is well established that such a claim may be analyzed under the *McDonnell Douglas* structure developed in Title VII suits. The *McDonnell Douglas* test, as recently explained by the Supreme Court in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and as modified by this circuit for application in discharge (as opposed to hiring) cases, is as follows: If plaintiff proves by a preponderance of the evidence that he or she is a member of a protected class, was qualified for the position held, and was discharged and replaced by a person outside of the protected class or was discharged while a person outside of the class with equal or lesser qualifications was retained, then plaintiff has established

a "prima facie case" of discrimination. *Jackson v. City of Killeen*, 654 F.2d 1181, 1183–84 & n.3 (5th Cir. 1981); *Rhode v. K.O. Steel Castings, Inc.*, 649 F.2d 317, 322 (5th Cir. 1981). "Prima facie case" has a specialized meaning in this context that goes beyond simply producing sufficient evidence to create a jury question; rather, this prima facie case creates a rebuttable presumption of discrimination and therefore if not rebutted requires a verdict for plaintiff. *Burdine, supra,* 450 U.S. at 254 & n.7, 101 S.Ct. at 1094 & n.7.

■ The nature of the rebuttal burden on the defendant, though, is merely one of production, not proof. Defendant must articulate a legitimate, nondiscriminatory reason for discharge. *Id.* at 257–58, 101 S.Ct. at 1096. Once defendant meets this burden the analysis proceeds to the third stage at which the plaintiff must prove by a preponderance of the evidence either that the asserted legitimate reason is pretextual or more directly that a discriminatory reason motivated the discharge. *Id.* at 255–56, 101 S.Ct. at 1094–1095.

■ The *McDonnell Douglas* analysis is only one means of proving a case of discrimination, however. It is not the exclusive means. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *International Brotherhood of Teamsters v. U.S.*, 431 U.S. 324, 357–58, 97 S.Ct. 1843, 1865–1866, 52 L.Ed.2d 396 (1977); *Lee v. Conecuh County Board of Education, supra,* 634 F.2d at 962; *McCuen v. Home Insurance Co.*, 633 F.2d 1150, 1151–52 (5th Cir. 1981); *McCorstin v. U.S. Steel Corp.*, 621 F.2d 749, 753–54 (5th Cir. 1980). The *McDonnell Douglas* analysis is "[i]ntended progressively to sharpen inquiry into the elusive factual question of intentional discrimination," *Burdine,* 450

---

**5.** It was also alleged that the nonrenewals violated a prior desegregation order. No difference in analysis is contended to result from this second theory of action and so we limit our discussion in text to a § 1983 analysis. We note, however, that where the controversy arises out of a school desegregation order the nature of defendant's rebuttal burden may be greater. *See* note 7 *infra; McWilliams v. Escambia County School Board,* 658 F.2d 326, 331 n.2 (5th Cir. 1981); *Lee v. Conecuh County Board of Education,* 634 F.2d 959, 963 (5th Cir. 1981) (using a "clear and convincing evidence" standard); *Washington County Board of Education, supra,* 625 F.2d at 1239–40 (same).

U.S. at 254 n.8, 101 S.Ct. 1089 at 1094 n.8, where the plaintiff's case is made out with *circumstantial* evidence supporting the *inference* of discrimination, *id.* at 253, 101 S.Ct. at 1093. Where a case of discrimination is made out by direct evidence, reliance on the four-part test developed for circumstantial evidence is obviously unnecessary. *See, e.g., Ramirez v. Sloss*, 615 F.2d 163, 168 & n.9 (5th Cir. 1980); *Crawford v. Western Electric Co., Inc.*, 614 F.2d 1300, 1315 (5th Cir. 1980).

■ Moreover, where a case for discrimination is proved by direct evidence it is incorrect to rely on a *McDonnell Douglas* form of rebuttal. Under the *McDonnell Douglas* test plaintiff establishes a prima facie case when the trier of fact *believes* the four circumstances outlined above which give rise to an *inference* of discrimination. Where the evidence for a prima facie case consists, as it does here, of direct testimony that defendants acted with a discriminatory motivation, if the trier of fact believes the prima facie evidence the ultimate issue of discrimination is proved; no inference is required. Defendant cannot rebut this type of showing of discrimination simply by articulating or producing evidence of legitimate, nondiscriminatory reasons.[6] Once an unconstitutional motive is proved to have been a significant or substantial factor in an employment decision, defendant can rebut only by proving by a preponderance[7] of the evidence that the same decision would have been reached even absent the presence of that factor. *Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). *See, e.g., Avery v. Homewood City Board of Education*, 674 F.2d 337 (5th Cir. 1982) (Unit B).

To summarize, the often used *McDonnell Douglas* test is but one way to prove discrimination. It is designed to focus the inquiry where circumstantial evidence is relied on. Where strong, direct evidence is presented, reliance on *McDonnell Douglas* as the exclusive means of proving the case and as the proper form of rebuttal is incorrect. When a significant unconstitutional motive is ultimately proved, by either circumstantial or direct evidence, the defendants' only form of rebuttal is under *Mt. Healthy*.

■ The foregoing principles concern the cases of the three plaintiff teachers alleging race discrimination. Plaintiff Barnes contends, however, that he was discharged in retaliation for the exercise of his First Amendment rights. There is some doubt whether such a case is ever properly analyzed under a pure *McDonnell Douglas* approach, *see Conecuh County Board of Education, supra*, 634 F.2d at 962, and such cases are typically discussed under a *Mt. Healthy* analysis, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), or under a retaliatory discharge analysis, *see Lindsey v. Mississippi Research and Development Center*, 652 F.2d 488 (5th Cir. 1981).

In light of the above, the district court's analysis is insufficient in several respects. First, the court's ruling might be construed as considering plaintiffs to have established a prima facie case, and then focusing on a *McDonnell Douglas* type of rebuttal. If so this was error, for the plaintiffs' evidence, if accepted, is of the type that is not properly rebutted by a mere statement of legitimate reasons. The Chavala principal, a man with several years of experience in educational civil rights matters, and the Russell County superintendent of education, who had worked with this school board for several years, each testified unequivocally that the discharges were racially motivat-

---

**6.** To allow rebuttal of a proved case of discrimination simply by articulation of a plausible nondiscriminatory reason would be to "stick [plaintiff] on the four prongs of *McDonnell Douglas* when he has already shown intentional discrimination by direct evidence." *Ramirez, supra*, 615 F.2d at 169 n.10 (5th Cir. 1980).

**7.** Note that where there is a past history of discrimination, possibly the burden is one of

ed.[8] Moreover, there was evidence that school board members and a past principal sought to maintain a "white presence" and stop white flight, and urged the superintendent and Dr. Barnes to "build cases" against black teachers. If this evidence was believed, then defendants could rebut only by showing that they would have made the same decisions despite the race factor. The district court made no such finding.

Second, the court might have disbelieved plaintiffs' evidence. If so, it did not state why this apparently highly probative evidence was discredited. In these circumstances some indication of the court's reasons for rejecting this evidence must be given in order for us to exercise properly our function of appellate review.[9]

Third, the district court might have been under the view that it was not necessary to decide whether to believe plaintiffs' evidence, for it stated that the school board is not "required to prove total absence of any discriminatory motive." Although we have stated this in dictum, *Whiting v. Jackson State University*, 616 F.2d 116, 121 (5th Cir. 1980),[10] it bears emphasis that the principle is an extremely limited one: an insignificant unconstitutional factor does not warrant relief, but significant reliance on an impermissible factor is a violation. *Mt. Healthy, supra*, 429 U.S. at 287, 97 S.Ct. at 576.

Finally, assuming that a prima facie case was established by *McDonnell Douglas* fac-

tors[11] there are difficulties with the court's rebuttal evidence analysis. The court mentioned as to Crenshaw his failure to properly account for school funds and his causing bad publicity about school matters. Although there is evidence in the record concerning Crenshaw's alleged bad accounting practices, this was not a reason articulated by school board members when they were questioned; instead, they referred to his coaching skills and complaints about leaving his class unattended. If there was no evidence that asserted reasons for discharge were actually relied on, the reasons are not sufficient to meet defendant's rebuttal burden. *Tanner v. McCall*, 625 F.2d 1183, 1195 n.21 (5th Cir. 1980). Concerning bad publicity, we are unable to find any reference in the record to this as a possible or actual reason for discharge.

The reason assigned by the court for Barnes' nonrenewal was his failure to conduct adequate investigations of complaints about school matters. Again, this was not a factor given by the school board members when they testified. The school board members gave as their reasons that Barnes was "not his own man" and was "not the leader we needed." These reasons, before they can be accepted as sufficient rebuttal, must be scrutinized to determine whether they are "clear and reasonably specific." *Burdine*, 450 U.S. at 258, 101 S.Ct. at 1096. Excessively subjective and vague criteria may be insufficient because they do not

---

clear and convincing evidence. *See* note 5, *supra*.

**8.** And in the case of Dr. Barnes, motivated by his support for racial minority teachers.

**9.** *See Golf City, Inc. v. Wilson Sporting Goods Co.*, 555 F.2d 426, 435 (5th Cir. 1977):

"We have concluded that the findings of the district court do not provide a sufficiently definite predicate for proper appellate review. Many of the findings are couched in conclusory terms. Some are announced solely as ultimate findings without support which clearly reflected a choice between conflicting accounts of events or between alternative legal interpretations of those events. This court cannot be left to guess. The findings and conclusions on review must be expressed with sufficient particularity to allow us to

determine rather than speculate that the law has been correctly applied."

**10.** "Title VII is not violated simply because an impermissible factor plays *some* part in the employer's decision, ... but it must be a *significant* factor." (emphasis in original).

**11.** We note, though, that it is not at all clear whether a *McDonnell Douglas* prima facie case could be made out on these facts as to all plaintiffs. There is no evidence concerning the relative qualifications of those retained, and Crenshaw is the only one shown to have been replaced by a nonminority person. Moreover, there is some doubt whether Barnes' case is properly analyzed under the traditional *McDonnell Douglas* factors at all, as discussed above.

allow reasonable opportunity to rebut. *See Lee v. Conecuh County Board of Education,* supra, 634 F.2d at 963; *Robbins v. White-Wilson Medical Clinic, Inc.,* 660 F.2d 1064, 1067–68 (5th Cir. 1981). Moreover, the district court indicated that "there doesn't have to be any substantial reason" for nonrenewal. Although this statement is correct in the abstract,[12] in the context of a rebuttal of a *McDonnell Douglas* prima facie case it is incorrect.[13]

To summarize, the district court may have made its ruling under the incorrect view that a *McDonnell Douglas* rebuttal is sufficient to meet direct proof that race was a significant factor in the nonrenewal decisions. If it did not, then the court's findings were inadequate because the court did not mention or explain why it did not accept plaintiffs' strong evidence of discrimination. At a third level, assuming that the court properly rejected the direct evidence of discrimination but recognized a prima facie case based on *McDonnell Douglas* factors, its analysis of legitimate, nondiscriminatory reasons for nonrenewal was faulty. In light of the difficulty of these issues and the complexity of this case, we mention that the following issues are among those that should be addressed on remand:

> Does plaintiffs' direct evidence prove that race or retaliation for support of racial minorities was a significant factor in the board's decisions?

> If so, has the board proved that it would have taken the same action absent those factors?

> If the direct evidence does not prove discrimination, are the elements of a *McDonnell Douglas* case met, and is it appropriate to analyze Barnes' First Amendment/retaliatory discharge claim under traditional *McDonnell Douglas* factors?

> If so, has the board sufficiently articulated valid, nondiscriminatory reasons for its actions?

> If there is sufficient articulation, have plaintiffs proved the reasons to be pretextual or otherwise carried their ultimate burden of showing a significant unconstitutional motive?

The judgment of the district court is VACATED and REMANDED for further proceedings not inconsistent with this opinion.

---

12. The nonrenewal of an untenured teacher is not unconstitutional simply because it was done for no reason. *Megill v. Board of Regents,* 541 F.2d 1073, 1077 (5th Cir. 1976).

13. Plaintiff Walker contends that the court erred in allowing defense counsel to request her to write a sample sentence on a courtroom blackboard in order to test her spelling and grammar. This was properly within the court's broad discretion over the admission of evidence in a bench trial.