**Zbigniew W. DYBCZAK, Plaintiff-Appellant,**

**v.**

**TUSKEGEE INSTITUTE, an Alabama corporation, Defendant-Appellee.**

**No. 83–7037.**

United States Court of Appeals, Eleventh Circuit.

Aug. 1, 1984.

Rehearing and Rehearing En Banc Denied Sept. 4, 1984.

Alvin T. Prestwood, Claude P. Rosser, Jr., Prestwood & Rosser, Montgomery, Ala., for plaintiff-appellant.

Marvin S. Cohen, John M. Gibbons, Stroock & Stroock & Lavan, Washington, D.C., Fred D. Gray, Gray, Seay & Langford, Tuskegee, Ala., for defendant-appellee.

Before KRAVITCH, JOHNSON and HATCHETT, Circuit Judges.

KRAVITCH, Circuit Judge:

In this employment discrimination action, plaintiff-appellant, Zbigniew W. Dybczak, challenges the district court's judgments in favor of defendant-appellee, Tuskegee Institute, entered on a jury verdict and on issues of equitable relief reserved to the court. Specifically, Dybczak asserts that the district court erred (1) in refusing to enjoin the Institute's alleged adherence to a policy of preferring black role models on its faculty and (2) in failing to charge the jury on the defendant's burden of proving it would have made the same employment decisions in the absence of discrimination. Concluding that the court below did not err in these respects, we affirm.

## I. FACTS AND PROCEEDINGS BELOW

Tuskegee Institute is an institution of higher learning, the student body and faculty of which are predominantly black. Zbigniew W. Dybczak, a white male of Polish descent, served as the dean of the School of Engineering at the Institute from 1960 to July 1981, after which he continued to serve as a professor of engineering. He was originally employed under a three-year contract, but after 1963 he served by appointment of the president on an annual basis. Of the Institute's eighteen officers in 1981, only Dybczak was white.

In December 1980, Dybczak began negotiations with the administration over the terms of his employment as dean for the 1981–82 academic year. In February 1981, he sent two memoranda to the president, Dr. L.H. Foster, seeking a significant increase in salary, one year of sabbatical and retroactive compensation for independently performed research. On March 2, Dr. Foster offered Dybczak a 7% salary increase and leave for seven months with pay, but declined to compensate him for the previous research. In a letter dated March 21, Dybczak restated his demands. On April 13, Dr. Foster acknowledged Dybczak's letter, but stated, "I am not prepared to negotiate further on these three matters." On June 5, Dr. Foster sent a letter to Dybczak, reappointing him as dean with a 7% increase in salary. On June 19, Dybczak replied that he was prepared to accept the reappointment subject to additional sabbatical and a salary increase. On June 22, Dr. Foster repeated that he was "not prepared

to negotiate further on these three matters" and requested "a definite response to the offer and specific terms of your continued employment at Tuskegee." On July 1, Dybczak sent a one-sentence letter, stating, "I regret that I cannot accept your offer of April 13 and June 22." The next day, Dr. Foster responded that he regarded Dybczak's letter as a rejection of the offer of employment and that he accepted Dybczak's resignation. After a series of letters and a conference, Dr. Benjamin F. Payton, who succeeded Dr. Foster as president on August 1, 1981, offered to renew Dybczak's appointment as a tenured professor and to authorize seven months' sabbatical. Dybczak accepted the offer "under protest."

In September 1981, Dr. Payton appointed a search committee to solicit applications and nominate candidates for the newly vacated position of dean. The committee ultimately nominated four candidates. Although Dybczak did not apply for the position until the published deadline had expired, his application was forwarded to Dr. Payton. Dr. Payton appointed Dr. Vascar Harris, a black aerospace engineer, as dean, effective August 15, 1982.

In his complaint, as amended, Dybczak alleged that the Institute had discriminated against him in his employment on the basis of his race and national origin. He sought reinstatement, back pay and attorney's fees under Title VII, 42 U.S.C. § 2000e, and damages under section 1981, 42 U.S.C. § 1981. The complaint also prayed for a temporary restraining order or, in the alternative, a preliminary injunction enjoining the Institute from appointing anyone other than Dybczak as dean and ordering the Institute to reinstate Dybczak as dean, and for a permanent injunction enjoining future discrimination against Dybczak. After a hearing, the district court denied preliminary injunctive relief. In his motion for partial summary judgment, Dybczak asserted that he was entitled to an injunction against the Institute's pattern and practice of discriminating in the implementation of a faculty hiring policy favoring blacks over whites as role models. Dybczak's motion for partial summary judgment and the Institute's motion for summary judgment were denied by the court.

Evidence adduced at trial indicated that in 1973 and 1975, the administration had been concerned about the number of blacks on the School of Engineering faculty. Dr. Foster testified that hiring blacks had been considered important because of their ability to serve as role models for the students and that he had been concerned about Dybczak's failure to seek more black applicants for the pool from which new faculty members were chosen. With respect to Dybczak's qualifications, Dr. Foster noted problems with Dybczak's performance of administrative duties, his desire to operate more autonomously and his apparent insensitivity to the overall mission of the Institute. With respect to Dr. Harris' qualifications, on the other hand, Dr. Payton testified that Dr. Harris' experience and scholarship in engineering fields related to aerospace science were important as Dr. Payton planned to reorient the School of Engineering and to introduce a program in aerospace science. He also identified Dr. Harris' general academic qualifications, his military service and his prior work with the dean of a larger engineering school as factors in his favor. The jury returned a verdict for the Institute on December 1, 1982, and on December 3, 1982, the district court entered a judgment on the verdict and a judgment denying equitable relief.

## II. DENIAL OF INJUNCTION

Dybczak asserts that regardless of whether he was adversely affected by the Institute's alleged "policy of preferring the recruitment of black 'role model' professors," the policy constitutes a pattern and practice of discrimination warranting injunctive relief. In his brief, he states:

The Plaintiff's position is that he was entitled to an injunction prohibiting the Defendant's continued adherence to its pattern and practice of discrimination even if that pattern and practice did not cause the Plaintiff's loss of employment as dean or if it did not cause the Defendant not to reemploy him as dean.

It is well settled that where claims at law and in equity are joined and

the legal claims are tried separately by a jury, the jury's verdict operates as a finding of fact binding on the trial court in its determination of the equitable claims. As the court observed in *Williams v. City of Valdosta*, 689 F.2d 964 (11th Cir.1982), "all findings necessarily made by the jury in awarding the verdict to [a party] are binding on the parties as well as on the trial court." *Id.* at 976. Insofar as the jury's verdict in this case establishes that the Institute did not discriminate against Dybczak,[1] the question presented is whether an injunction which may benefit nonparties (white faculty candidates other than Dybczak), but which is wholly unrelated to the rights of the plaintiff (Dybczak) is mandatory in an individual action.

In *Gregory v. Litton Systems, Inc.*, 472 F.2d 631 (9th Cir.1972), the Ninth Circuit recognized that injunctive relief which "may incidentally benefit many persons not before the court" is appropriate if "necessary to give a plaintiff or a group of plaintiffs relief to which they are entitled." *Id.* at 633–34. The court expressly disapproved of "injunctive benefits for nonparties [which are] neither incidental nor necessary to the resolution of the pending litigation." *Id.* at 634. In *Meyer v. Brown & Root Construction Co.*, 661 F.2d 369 (5th Cir.1981), the Fifth Circuit observed:

> Injunctive relief which benefits nonparties may sometimes be proper even where the suit is not brought as a Rule 23 class action. ... The court in *Gregory* noted that there are many cases where injunctive relief designed to assist a party will accidentally assist persons not before the court. This is not a case where injunctive relief need be designed for a just disposition of the action. That portion of the judgment granting injunctive relief is therefore reversed.

*Id.* at 374. From these precedents, we conclude that in a suit brought in the plaintiff's individual capacity, injunctive relief benefiting nonparties is not required if it in no way relates to the vindication of the plaintiff's rights. Accordingly, we hold that the district court did not err in refusing to enjoin the Institute's alleged adherence to a policy favoring blacks in faculty hiring.[2]

## III. JURY INSTRUCTIONS

Dybczak contends that the jury was improperly charged on the burden of proof with regard to discrimination. The jury, he argues, should have been instructed that once the plaintiff makes a prima facie showing

> that the Defendant's pattern and practice of preferring blacks in employment at Tuskegee Institute was a substantial factor in the decision of the Defendant not to retain him or not to reappoint him as Dean .... then the Defendant has the burden of satisfying you, by a preponderance of the evidence, that the decision not to retain him or not to reappoint him as Dean would have been made in the absence of the Defendant's pattern and practice.

Dybczak relies on *Lee v. Russell County Board of Education*, 684 F.2d 769 (11th Cir.1982), in which this court stated:

> Once an unconstitutional motive is proved to have been a significant or substantial factor in an employment decision, defendant can rebut only by proving by a preponderance of the evidence that the same decision would have been reached even absent the presence of that factor.

*Id.* at 774 (footnote omitted).

The Institute responds that the correct allocation of burdens is that outlined in

---

1. Put more precisely, the jury verdict establishes that with respect to the Institute's failure to retain Dybczak as dean, either it did not discharge him or it did not discriminate against him in discharging him, and that with respect to the Institute's failure to reappoint Dybczak as dean, it did not discriminate against him. For present purposes, the distinction between a no discharge finding and a no discrimination finding is not significant.

2. *Gregory* and *Meyer* cannot be distinguished on the ground that the plaintiffs in those cases did not ask for injunctive relief, whereas Dybczak asked for such relief, but was not entitled to it. The point is that regardless of the reason, injunctive relief for the individual plaintiffs was inappropriate in all three cases.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and explained in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In *McDonnell Douglas,* the Court set forth a three-step analysis: (1) "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination," 411 U.S. at 802, 93 S.Ct. at 1824; (2) "The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection," *id.;* (3) The plaintiff may still prevail if he shows that the defendant's "stated reason for [the plaintiff's] rejection was in fact pretext," *id.* at 804, 93 S.Ct. at 1825. The Institute asserts that it succeeded in articulating legitimate, nondiscriminatory reasons for Dybczak's rejection and that the district court was therefore correct in charging on the plaintiff's burden of proving pretext.

■ In *Lee,* the court explained that whether the *Lee* standard or the *McDonnell Douglas* standard applies in an employment discrimination case depends on whether the plaintiff succeeds in proving discriminatory motive with direct evidence. The court observed:

> The *McDonnell Douglas* analysis is "[i]ntended progressively to sharpen inquiry into the illusive factual question of intentional discrimination," *Burdine,* 450 U.S. at 254 n. 8 [101 S.Ct. at 1094 n. 8], where the plaintiff's case is made out with *circumstantial* evidence supporting the *inference* of discrimination, *id.* at 253 [101 S.Ct. at 1093]. Where a case of discrimination is made out by direct evidence, reliance on the ... test developed for circumstantial evidence is obviously

unnecessary. Moreover, where a case for discrimination is proved by direct evidence it is incorrect to rely on a *McDonnell Douglas* form of rebuttal."

684 F.2d at 773–74 (citations omitted) (emphasis in original); *see also Bell v. Birmingham Linen Service,* 715 F.2d 1552, 1556–57 (11th Cir.1983) ("If the evidence consists of direct testimony that the defendant acted with a discriminatory motive, and the trier of fact accepts this motive, the ultimate issue of discrimination is proved. Defendant cannot refute this evidence by mere articulation of other reasons"); *Perryman v. Johnson Products Co.,* 698 F.2d 1138, 1143 (11th Cir.1983) ("If the factfinder believes the direct evidence presented by the plaintiff .... the burden shifts to the defendant to prove by a preponderance of the evidence that the adverse action would have been taken even in the absence of a discriminatory motive"); *accord Toney v. Block,* 705 F.2d 1364, 1367 (D.C.Cir.1983). Dybczak's strongest evidence consists of Dr. Foster's testimony regarding the importance of black role models on the faculty and the concern, in 1973 and 1975, about Dybczak's efforts to find more black applicants. Dybczak also relies on evidence demonstrating that a high percentage of the faculty is black and that other deans, who were black, were allowed to negotiate their contracts without losing their posts. As this evidence is not *directly* probative of the Institute's intent when dealing with Dybczak in particular, we conclude that the charge suggested by *Lee* would have been inappropriate.

■ The question, then, is whether the jury was properly charged under *McDonnell Douglas.*[3] We must determine whether the Institute met its burden of articulating legitimate, nondiscriminatory reasons for its actions and, if so, whether the jury was correctly instructed on the plaintiff's burden of proving pretext.[4]

---

3. Although *McDonnell Douglas* is a Title VII case, whereas the issues tried by the jury in this case relate to Dybczak's section 1981 claim, "it is well established that such a claim may be analyzed under the *McDonnell Douglas* structure developed in Title VII suits." *Lee,* 684 F.2d at 773. Hence, *McDonnell Douglas* provides the

controlling standard even though it did not involve a jury charge under section 1981.

4. Implicit in this approach is the assumption that the trial court need not instruct the jury on the defendant's burden of articulating a legitimate, nondiscriminatory reason for its action.

In *Burdine,* the Court explained the second step of the *McDonnell Douglas* analysis as follows:

> The burden that shifts to the defendant ... is to rebut the presumption of discrimination by producing evidence that plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant.

450 U.S. at 254–55, 101 S.Ct. at 1094 (citation and footnote omitted).

■ In connection with its failure to retain Dybczak as dean, the Institute presented evidence of at least two legitimate reasons: Dybczak's adamant demands concerning nonnegotiable terms of employment and his delinquency in fulfilling certain administrative responsibilities. In connection with the Institute's failure to reappoint Dybczak as dean, there is also evidence of the eventual appointee's superior qualifications, especially his familiarity with aerospace science. By articulating these nondiscriminatory reasons, the Institute plainly satisfied its burden under *McDonnell Douglas.*

The plaintiff's burden of proving pretext was described in *McDonnell Douglas* as that of demonstrating "by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision." 411 U.S. at 805, 93 S.Ct. at 1826. The *Burdine* Court explained:

> The plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

450 U.S. at 256, 101 S.Ct. at 1095.

■ In this case, the district court charged:

> Now, with regard to his claim of termination because of race, Dr. Dybczak, in order to prevail, must prove certain things. One, that his actions concerning the terms of his contract were not the equivalent of a resignation, and that he was discharged by Tuskegee Institute from his position as Dean by Tuskegee's refusal to renew his employment for the 1981–82 school year. If he's not proved that he was discharged, you must find in favor of Tuskegee Institute on this claim. Second, if, on the other hand, you find that he was discharged, Dr. Dybczak must prove that the reasons given by the Institute for not continuing him in the position as Dean were a pretext for discrimination on the basis of race and that the real reason for the termination of the plaintiff was because of his race and that the reasons offered by the defendant for the plaintiff's termination were in fact a cover-up for racial discrimination.

---

As the Court pointed out in *Burdine,* the *McDonnell Douglas* analysis "serves to bring the litigants and the court expeditiously and fairly to [the] ultimate question" of discrimination. 450 U.S. at 253, 101 S.Ct. at 1093–1094. Where the plaintiff has made out a prima facie case and the defendant has responded with a legitimate, nondiscriminatory reason, the "ultimate question" for the jury is that of pretext. The antecedent question whether the defendant has met its "burden of production," *id.* at 255 n. 8, 101 S.Ct. at 1094 n. 8, is for the court to answer in deciding how to instruct the jury on the plaintiff's burden of proof.

With regard to his claim of discrimination in the selection of a new Dean of the Engineering School in 1982, Dr. Dybczak must prove, one, that he was qualified to do the job. If he has not proved that he was qualified, you must find in favor of Tuskegee on this claim. Second, if, on the other hand you find that he was qualified for the job, Dr. Dybczak must prove that the reasons given by the Institute for not selecting Dr. Dybczak to be Dean were a pretext for discrimination on the basis of race and that the real reason for the nonselection of plaintiff was because of his race and that the reasons offered by the defendant, Tuskegee, for plaintiff's nonselection were in fact a cover-up for racial discrimination.

As this instruction accurately reflects the plaintiff's burden under *McDonnell Douglas*,[5] we hold that there was no error in the jury charge.

For these reasons, the judgments of the district court are AFFIRMED.

---

**5.** Elsewhere in its charge to the jury, the district court, referring to the pretext analysis, stated, "If you find from a preponderance of the evidence that the defendant would have retained or would have reappointed the plaintiff in the absence of [discrimination], then you may return a verdict in favor of the plaintiff and against the defendant." To the extent that it focuses on the question whether the defendant's motive was *actually* discriminatory, not the *hypothetical* question whether the defendant would have taken the same action even if there had been no discriminatory purpose, we think that formulation of the burden in terms of the pretextual nature of the articulated reason is preferable. Given the portion of the charge quoted in the text, however, the district court's use of the other formulation, in itself, scarcely amounts to reversible error.