**Daniel JEAN–GILLES, Plaintiff,**

v.

**COUNTY OF ROCKLAND and C. Scott Vanderhoef, County Executive, County of Rockland, sued in his official and individual capacities, Defendants.**

**No. 00CIV.4861(CM).**

United States District Court, S.D. New York.

April 4, 2002.

Michael Howard Sussman and Stephen Bergstein, Goshen, NY, for Plaintiff.

John D. Winter, Patterson, Belknap, Webb & Tyler, L.L.P., New York City, for Defendant.

## MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

Plaintiff, Daniel Jean–Gilles is a black man and native of Haiti. He has been employed since 1992 by the Rockland County Department of Human Rights (DHR). The DHR is responsible for investigating and reporting on potential human rights violations in employment, housing, and other areas within the County. Throughout his employment, plaintiff has been the only Human Rights Specialist (HRS) at the DHR. The only other employee of the Rockland County DHR is the Commissioner. There have been three commissioners during Plaintiff's tenure as the HRS: Alma Roman (an African–American woman) from 1992 through 1995; Cassandra McIntyre (an African–American woman) from 1995 through 1999; Sreeramulu Nagubandi (an Asian–American) from 2000 to the present. During the ten month period between the Commissionerships of Ms. Roman and Ms. McIntyre, plaintiff was the sole employee of the DHR, performing his duties as the HRS and as acting commissioner.

Plaintiff complains that the decision of Town Supervisor, Scott Vanderhoef not to appoint plaintiff to the commissionership at the end of McIntyre's term was based on plaintiff's race and in retaliation for plaintiff's political speech. Plaintiff's claims are based on the equal protection clause of the Fourteenth Amendment, the free speech clause of the First Amendment, 42 U.S.C. § 1983 and 1981, and § 296 of the Executive Law. Defendants have moved for summary judgment and request dismissal of plaintiff's complaint.

*The Race Claim*

Because Jean–Gilles alleges discriminatory treatment in violation of Title VII, the

Court applies the three-step burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In *McDonnell Douglas*, the Supreme Court established an "allocation of the burden of production and an order for the presentation of proof in Title VII cases." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993). Under this framework, plaintiff first must establish a prima facie case of discrimination. To establish a prima facie case, plaintiff must show that: (1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) he was performing his duties satisfactorily; and (4) the circumstances surrounding the employment action give rise to an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 803, 93 S.Ct. 1817. Plaintiff's burden of establishing a prima facie case is "minimal." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 506, 113 S.Ct. 2742; *Fisher v. Vassar College*, 114 F.3d 1332, 1340 n. 7 (2d Cir.) (en banc), *cert. denied*, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). If plaintiff succeeds, a presumption of discrimination arises.

Once a plaintiff proves the prima facie case, a presumption that the employer unlawfully discriminated against the employee is raised and the burden of production then shifts to the employer "to articulate some legitimate nondiscriminatory reason for the employee's rejection." *Fisher v. Vassar College*, 114 F.3d 1332, 1335–36 (2d Cir.) (en banc), *cert. denied*, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). The employer's explanation must be clear and specific, so that the employee has an opportunity to demonstrate pretext. *See Meiri v. Dacon*, 759 F.2d 989 (2d Cir. 1985).

Should the defendant carry this burden, the plaintiff must then demonstrate that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802, 804, 93 S.Ct. 1817). To satisfy this burden, the plaintiff must show that: (1) the proffered reason is false; and (2) that discrimination was the real motive for the employment action. *St. Mary's Honor Center v. Hicks*, 509 U.S. at 515, 113 S.Ct. 2742; *Gallo v. Prudential Residential Svcs. Ltd.*, 22 F.3d 1219, 1225 (2d Cir. 1994). While the burden of production may shift, the burden of proving discriminatory intent remains always with the plaintiff. *See id.* at 253, 101 S.Ct. 1089, 67 L.Ed.2d 207; *St. Mary's Honor Ctr.*, 509 U.S. at 507, 113 S.Ct. 2742.

Defendants argue that under this three-tiered burden-shifting framework plaintiff has not met his initial burden of establishing a *prima facie* case of racial discrimination for at least two reasons: (1) he is not qualified to be the Commissioner of DHR; and (2) no circumstances give rise to an inference of discrimination.

Defendants contend that plaintiff's answers to questions posed to him during his deposition, relative to his ability to investigate human rights complaints, demonstrates that he is not qualified to perform the duties of the Commissioner:

Q If the commissionership was currently vacant, would you be able to adequately conduct an investigation without the aid of another individual, other than the clerical staff?

A If the commissionership—

Q—was vacant?

A Now?

Q Correct.

A No.

(Jean–Gilles Dep. at 93).

However, there are passages from plaintiff's deposition—not cited by defendants—in which plaintiff states unequivocally that he is qualified to perform investigations and be Commissioner:

Q Do you believe you're able to adequately do an investigation at the current time?

A Absolutely.

(Jean–Gilles Dep. at 91). Asked what Aid plaintiff needed from the commissioner to conduct an investigation, plaintiff responded:

A I can only answer that by saying the specific skills that certainly I provided when I was acting commissioner as well as those that would be provided by anyone competent in that job or who had experience in the field.

(Jean–Gilles Dep. at 92–93).

■ Contrary to defendants' contention, whether plaintiff is qualified to be commissioner of DHR, and if so, whether Mr. Nagubandi was more qualified than plaintiff, are classic questions of fact that cannot be resolved on motion. Indeed, while plaintiff has worked in various capacities for the DHR—including as acting commissioner—for more than a decade, Mr. Nagubandi's work experience lies mostly in the private sector as a manager of research for a pharmaceutical company. And while defendants' argue that a good part of the decision to select Nagubandi over plaintiff was Vanderhoef's subjective concern about plaintiff's lack of interpersonal skills and ability to lead the Department (legitimate concerns if honestly held), these are also the type of pretextual reasons easily evoked by an employer in an attempt to disguise a more sinister motive behind an employment decision. .

Defendants further contend that the complaint fails to establish a *prima facie* case because the person who ultimately was awarded the commissionership was another minority. Relying on *Budde v. H & K Distributing Co.*, No. 99–9449, 2000 WL 900204, at *1 (2d Cir. June 29, 2000), defendants claim that no inference of racial discrimination may be drawn unless plaintiff proves that a member of the non-protected class was given the commissioner position. While some courts within the district have required an employee to demonstrate that he was replaced by a person outside the protected class, *(see Lee v. Russell County Board of Education*, 684 F.2d 769, 773 (11th Cir.1982)); *Wade v. New York Telephone Co.*, 500 F.Supp. 1170, 1176 (S.D.N.Y.1980), nothing in *Budde* mandates such a showing by a plaintiff. Indeed, other Courts within the Circuit have found such a rigid approach is at odds with the policies underlying Title VII. *Meiri v. Dacon*, 759 F.2d 989, 996 (2d Cir.1985). In *Meiri* the Court discussed why such an approach is inappropriate:

From a practical perspective, requiring a plaintiff to demonstrate that her job was filled by a "person outside the protected class" could create enormous difficulties involving the identification of the protected class. In this case, for example, it is unclear whether the protected class would be followers of Orthodox Judaism or followers of Judaism generally.... The elements of proof in employment discrimination cases were not intended to be rigid, mechanized or ritualistic [but][r]ather, they were intended only to promote the general principle that a Title VII plaintiff must carry the initial burden of offering evidence adequate to raise[ ] an inference of discrimination. When examined against these conceptual underpinnings, we believe the fact that Meiri was not replaced by a non-Jew—indeed, she was never replaced—may weaken, but cer-

tainly does not eliminate, the inference of discrimination.

*Meiri,* 759 F.2d at 996 (internal citations omitted).

Here plaintiff is claiming that an Asian American was given the Commissionership because the Asian candidate was more palatable alternative to the County Executive than a Black Haitian. Unfortunately, it does not strain credulity to imagine an employment hiring situation where an Asian is favored instead of a Black Haitian because of racial animus. While the fact that another minority was made commissioner does tend to weaken plaintiff's claim, it does not foreclosed his claim.

The reasons proffered by defendants as to why they preferred Nagubandi over Jean–Gilles may indeed be legitimate reasons; however, the court can not rule out, based on the submissions, that those reasons were not pretextual. There is enough evidence of plaintiff's superior qualifications for the issues of whether Nagubandi was more qualified than Jean–Gilles, and whether the County Executive's decision not to promote plaintiff to the commissionership was ultimately based on racial bias, to go to the jury.

*First Amendment Retaliation Claim*

In a separate, but somewhat related claim, plaintiff contends that the other reason he was not promoted to the commissionership is because of his outspoken views on racial issues and his criticism of County Executive Vanderhoef. Plaintiff apparently made public speeches on racial issues in 1996 that Executive Vanderhoef found to be objectionable. Vanderhoef wrote plaintiff in September of 1996, asking plaintiff to refrain from such public speech, calling his comments "divisive and partisan," and possibly undermining the work of the commission. (Bergstein Affidavit Exh. 9). In 1997, plaintiff also complained to County Officials about Vanderhoef's minority hiring practices

and his failure to adequately staff the Human Rights Commission and create a Fair Housing Board. Plaintiff claims that, although he was the most qualified candidate for the commissioner position, Vanderhoef denied plaintiff the position in retaliation for his outspoken political views and for his public criticism of the County Executive.

To establish a prima facie case for a First Amendment retaliation claim, plaintiff must show beyond a preponderance of evidence that: (1) his speech and viewpoints were constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his protected activity and the adverse employment determination against him." *Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir.1999). If the plaintiff establishes these factors, the burden shifts to the employer who must establish that "it would have taken the same adverse employment action 'even in the absence of the protected conduct.'" *Id.* at 110 (quoting *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

The question of whether certain speech enjoys a protected status under the First Amendment is one of law, not fact. *See Connick v. Myers,* 461 U.S. 138, 148 n. 7, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Central to this inquiry is whether the speech may "be fairly characterized as constituting speech on a matter of public concern." *Id.* at 146, 103 S.Ct. 1684. As a general rule, speech on "any matter of political, social, or other concern to the community" is protected by the First Amendment. *Id.* Here, the speech in question—issues of race policy in county government—falls squarely within the rubric "any matter of political, social, or other concern to the community." *See, Moray v. City of Yonkers,* 924 F.Supp. 8, 11

(S.D.N.Y.1996) ("when the employee's complaints to a supervisor implicate system-wide discrimination, they unquestionably involve a matter of public concern").

■ An adverse employment action includes *inter alia* discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand. *See Kaluczky v. City of White Plains,* 57 F.3d 202, 208 (2d Cir.1995) (citing *Rutan v. Republican Party,* 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990)). Here, plaintiff's claim that, as a long time employee, and once acting commissioner of DHR, he was improperly passed over for the commissionership, constitutes an adverse employment action.

■ Finally, the nexus between the particular speech and the adverse employment action must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech. *See Mount Healthy City,* 429 U.S. at 287, 97 S.Ct. 568. Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus. *See Sumner v. United States Postal Serv.,* 899 F.2d 203, 209 (2d Cir.1990). Summary judgment is precluded where questions regarding an employer's motive predominate in the inquiry regarding how important a role the protected speech played in the adverse employment decision. *See Piesco v. City of New York,* 933 F.2d 1149, 1155 (2d Cir. 1991).

■ Defendant argues that the time between the speech in question and the adverse employment action was so attenuated that no causal connection could be establish. Plaintiff's political comments

and his criticism of the Vanderhoef administration were uttered in 1996 and 1997. Plaintiff was denied the commissionership when it became vacant in 1998. In some cases such a gap between the speech and the employment action would belie a claim of retaliation. However, in the present case, given defendants' documented displeasure with plaintiff's speech (see the September Vanderhoef letter), it is entirely possible that defendants' still harbored resentment toward plaintiff for his views and public criticism when he applied for the commissionership in 1998. Whether in fact defendants actually seized on the occasion of plaintiff's candidacy to retaliate against him for his earlier speech is for this Court still an open question.

Defendants' motion for summary judgment is denied.