Keith HARRIS; Dennis Alexander; Tyrea Alexander, Appellants

v.

COBRA CONSTRUCTION; Joseph Orlando, Sr.

No. 07–1657.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 13, 2008.

Filed April 15, 2008.

H. Francis Delone, Jr., Wayne, PA, for Appellants.

Edith A. Pearce, Philadelphia, PA, for Appellee.

Before: FUENTES, CHAGARES, and VAN ANTWERPEN, Circuit Judges.

OPINION OF THE COURT

CHAGARES, Circuit Judge.

This is an employment discrimination action arising under Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e *et seq.*, and under the Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons.Stat. Ann. § 951 *et seq.* Dennis Alexander and Keith Harris appeal the District Court's order granting appellee Cobra Construction's motion for summary judgment on the Title VII and PHRA claims.[1] For the following reasons, we will affirm.

---

1. Keith Harris and Dennis Alexander also brought suit under state tort law for intentional infliction of emotional distress and assault; Tyrea Alexander brought suit for loss of consortium. The District Court declined to exercise supplemental jurisdiction over these state law claims and dismissed them without prejudice. That portion of the District Court's order is not, however, part of this appeal.

## I.

As we write only for the parties, our recitation of the facts is brief. Appellants, two African–American men, alleged that during a break at work on June 30, 2003, the owner of Cobra Construction, Joseph Orlando, pointed a sawed-off shotgun at them and ordered them to go back to work. Orlando asserted "that he could kill them, and described them in racially derogatory terms." Supplemental Appendix (Supp.App.) 104. Specifically, Orlando first waved the shotgun at appellants, stating "You only have to be 12 f——ing feet from the mf——ers and blow their brains out." *Id.* at 112, 118. He then pointed the shotgun at the union business agent who was working at the construction site and told him that he would "blow [his] f——ing brains out." *Id.* Orlando subsequently turned to appellants and said: "What are you two black mf——ers looking at? Now get back to work." *Id.* Orlando told the union agent to "get the f——ing off his job site," as the union agent walked away. *Id.*

Appellants were the only African Americans present during the incident. At their depositions, appellants stated that they had only seen Orlando once or twice before the incident and June 30, 2003 was the only time that he had spoken to them. Appellants allege that as a result of the incident, they were "both put in great fear and apprehension of imminent harmful contact and were forced to stop working for Cobra Construction out of concern for [their] personal safety." *Id.* at 18. Alexander returned to work for one day after the incident, and Harris returned to the construction site for two days, but they both stopped working for the company after that.

Appellants filed administrative complaints for employment discrimination with the Pennsylvania Human Relations Commission, which were denied, and for workers' compensation under the Pennsylvania Workers' Compensation Act, which were granted and paid. Appellants then brought this action in District Court. Cobra Construction filed a motion for summary judgment, which the District Court granted. This appeal followed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction over this appeal from the District Court's final judgment and order pursuant to 28 U.S.C. § 1291. When the District Court grants a motion for summary judgment, "[o]ur review is plenary." *Jensen v. Potter,* 435 F.3d 444, 448 (3d Cir.2006). Summary judgment is appropriate when no genuine issues of material fact are presented, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We "resolve all factual doubts and draw all reasonable inferences in favor of [appellants]." *DL Res., Inc. v. FirstEnergy Solutions Corp.,* 506 F.3d 209, 216 (3d Cir. 2007).

## III.

Appellants argue that "the combination of a racial slur and a death threat that exists in this case is, *a fortiori,* direct evidence of employment discrimination." Appellant Br. at 7. According to appellants, when "direct evidence is offered to prove that an employer discriminated, the shifting-burden analysis of *McDonnell Douglas Corp. v. Green* ... is inapplicable and the case proceeds as an ordinary civil suit." Appellant Reply Br. at 2 *(quoting Torre v. Casio,* 42 F.3d 825, 829 n. 3 (3d Cir.1994)). Cobra and Orlando counter that a single outburst is not sufficient evidence to support a discrimination claim. According to appellees, appellants' claims are based on a theory of racial harassment—not racial discrimination in the em-

ployment context. Appellee Br. at 14. Yet appellants contend that they are not asserting a claim for continuing harassment. Appellant Br. at 7. They argue that the District Court erred in analyzing the case in terms of continuing harassment and compounded that error by holding that appellants could not establish constructive discharge. We disagree.

The District Court correctly determined that "[w]ithout any evidence that Orlando's behavior, including his reference to their race, was directed toward [Harris and Alexander] as a result of racial animosity or with the intention to discriminate against them as a result of their race, Plaintiffs are unable to prove the existence of intentional discrimination." Appendix (App.) 9–10. As the District Court observed, "[Harris and Alexander] were not singled out and threatened based on their race; rather, they were threatened because they were witnesses to an argument between Orlando and the business agent.... The fact that Orlando identified [their] race in the course of threatening them does not convert the threat from one of unbridled anger and explosiveness, to one of racial discrimination." App. 9.

Harris and Alexander have failed to introduce "either direct evidence of a purpose to discriminate, or indirect evidence of that purpose" and have therefore not raised any issues of material fact necessary to survive a motion for summary judgment. *Hankins v. Temple Univ. (Health Sciences Ctr.),* 829 F.2d 437, 440–41 (3d Cir.1987); *see also Dillon v. Coles,* 746 F.2d 998, 1002–03 (3d Cir.1984) (noting "that in most employment discrimination cases direct evidence of the employer's motivation is unavailable or difficult to acquire").[2]

As appellees note, the cases cited by appellants to show that "the combination

of a racial slur and a death threat ... is, *a fortiori,* direct evidence of employment discrimination" are inapposite. In *Miles v. M.N.C. Corporation,* 750 F.2d 867 (11th Cir.1985), the supervisor's racial slur related to the work performance of African Americans and the reasons the company had not hired any African–American employees. 750 F.2d at 870, 875–76. In *Lee v. Russell County Board Of Education,* 684 F.2d 769 (11th Cir.1982), African–American teachers challenged decisions not to reemploy them in light of comments by a principal and the school board regarding the need to retain white teachers to prevent "white flight." 684 F.2d at 774–75. In *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241 (6th Cir.1995), an African–American sous chef challenged the restaurant owners' decision not to rehire him, presenting evidence of racist comments made by the owners. 61 F.3d at 1243–44, 1249–50. In contrast to these cases, Orlando did not make his racial remarks in the context of discussing appellants' work performance or while hiring, firing, demoting or promoting employees. Moreover, "stray remarks in the workplace" do not suffice. *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1096 (3d Cir.1995) *(quoting Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring)). Appellants have thus failed to present any direct evidence of employment discrimination.

In addition, appellants have not shown the severe or pervasive discrimination necessary to support a hostile work environment claim. *Pa. State Police v. Suders,* 542 U.S. 129, 146–47, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004) (noting in the context of a sexual harassment suit that "the offending behavior 'must be sufficiently severe or pervasive to alter the conditions of

---

**2.** The standard for employer liability under the PHRA is the same as the standard for liability under Title VII. *Knabe v. Boury Corp.,* 114 F.3d 407, 410 n. 5 (3d Cir.1997).

the victim's employment and create an abusive working environment' "). Nor have appellants offered evidence to sustain a constructive discharge claim. To establish constructive discharge, appellants must show that " 'the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.' " *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir.1996) *(quoting Goss v. Exxon Office Sys. Co.,* 747 F.2d 885, 888 (3d Cir.1984)). Because appellants have not presented any evidence of racial discrimination in the workplace, their constructive discharge claim must also fail.

We conclude, therefore, that the District Court properly granted Cobra Construction's summary judgment motion.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.