Thomas C. BIBBS, Jr., Appellant,

v.

John BLOCK, Secretary, United States Department of Agriculture, Appellee.

No. 83–1942.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1984.

Decided Dec. 5, 1984.

Rehearing En Banc Granted March 8, 1985.

Gwendolyn M. Wells, Kansas City, Mo., for appellant.

Kenneth Josephson, Kansas City, Mo., for appellee.

Before LAY, Chief Judge, FAIRCHILD,[*] Senior Circuit Judge, and McMILLIAN, Circuit Judge.

LAY, Chief Judge.

Thomas Bibbs brought this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e–17

---

[*] The HONORABLE THOMAS E. FAIRCHILD, Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

(1982), alleging that his denial of promotion by his employer, the Agricultural Stabilization and Conservation Service (ASCS), a division of the Department of Agriculture (DOA), was based on the impermissibly discriminatory reasons of both age and race. The district court found that, although he had presented a prima facie case of discrimination, Bibbs did not sustain his ultimate burden of establishing that race or age considerations prevented him from being promoted. The court therefore denied Bibbs recovery. We affirm the finding of the district court that age discrimination was not a causal factor in the promotion decision. However, we find that the district court, after finding that race was a discernible factor in the employment decision, applied an improper standard of causation to the mixed-motive question and thereby imposed too great a burden on the plaintiff. Upon review of the record, we find substantial evidence supporting the district court's finding that race was a discernible factor in the denial of promotion; the district court erred, however, in failing to find that plaintiff has sufficiently carried his burden of proof under *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981), to establish liability of the defendant.

**Facts**

Bibbs, who is black and was 43 years old at the time of the events in issue, is employed as an offset press operator by the DOA. In September 1976, Bibbs applied for the position of Offset Press Operator Supervisor at the Kansas City Data Systems Field Office, in which he had worked since 1972 or 1973. The vacancy announcement for Offset Press Operator Supervisor listed six qualifying criteria for the position and stated that the position would be filled in accordance with the ASCS Merit Promotion Plan.

Bibbs was one of seven individuals who applied for the position. He was the only black applicant and one of four who were then employed in the Print Shop. Everett Asberry, Supervisor of Administrative Spe-cialists, was chosen by his immediate supervisor, Joseph Tresnak, Administrative Division Chief, as the rating official for the promotion decision. Tresnak also prepared and signed the Supervisory Potential Form, which was used in the rating process, for each of the Print Shop applicants. As the rating official, Asberry, who is black, initially reviewed the applications and then forwarded all seven applications to a selection committee comprised of three individuals, all of whom are white: John Blitgen, Joseph Tresnak, and Maynard Cox. Blitgen was the first line supervisor of the position to be filled and had been in his position less than one month at the time of the promotion decision. Cox was the third line supervisor of the position to be filled. Tresnak was the second line supervisor of the position and, of the three members of the selection committee, he was the most familiar with the Print Shop and relations among the Print Shop employees. The evidence shows Tresnak was closely involved with the Print Shop, whereas Blitgen and Cox were not. The district court found that the "key figure" in making the promotion selection was Tresnak. Tresnak's central role in the selection process is particularly significant in light of the direct evidence of Tresnak's use of racial slurs. One witness testified that Tresnak had characterized plaintiff as a "black militant," while another testified that Tresnak referred to another Print Shop employee, who was black, as "boy" and "nigger."

After interviewing each of the seven candidates, the committee selected Dennis Laube, who was white and under forty years of age, for the position. According to testimony at trial, the three members of the committee, after conclusion of all the interviews and without consensus as to the criteria for selection, selected the same top three candidates and each chose them in the same order. The committee members testified that they did not discuss their views of the relative merits of the candidates before, during, or after the interviews. At trial, the factual basis for each member's decision to select Laube was questioned. Cox allegedly relied on a com-

bination of his judgment and experience in selecting supervisors, a method described by him as "mental process;" however, he admittedly considered the applicant's reputation which he heard from Tresnak or Asberry. Blitgen primarily relied on "technical knowledge," which included experience with the "4875 press." Such experience, however, was not reflected in the applicant's personnel file. The record substantiates that consideration of such experience was questionable because the evidence indicates that assignment to the machine was not rotated; thus, Bibbs and other Print Shop employees were effectively denied the opportunity to operate the press. The Department did not offer any legitimate explanation as to why Bibbs and other employees were not given such an opportunity. Finally, Tresnak testified that he considered many factors, including knowledge of the commodity operation, ability to get along with people (measured by whether Tresnak had received any reports of personnel problems involving the applicant), and knowledge of supervision.

■ In determining that the decision to deny Bibbs a promotion was not racially motivated, the trial court noted that the work force in the Print Shop was racially integrated. Such "bottom line" statistics, however, do not insulate an employer from liability for intentional discrimination against an individual employee. *See Connecticut v. Teal,* 457 U.S. 440, 454, 102 S.Ct. 2525, 2535, 73 L.Ed.2d 130 (1982). The trial court also found that Bibbs had a history of disciplinary and interpersonal problems and was not selected in part because he was difficult to work with and caused irritation among fellow workers. Yet this evidence consisted only of vague and general allegations of personnel problems not specifically attributed to Bibbs, which were confirmed by several Department employees (Asberry, Cox, Tresnak, and Blitgen). There is no evidence that the selection panel attributed the Print Shop personnel problems to Bibbs or considered such allegations as a factor in their selection.

Given the diverse factors each of the members of the selection committee used, and the alleged absence of any discussion among them during the deliberation process, the trial court judged the selection committee members "not particularly credible, either in demeanor or in the substance of their testimony. * * * The committee members were extremely guarded in their responses to questions and were quite defensive in their positions on matters that might reflect negatively on their decision. The Court is skeptical that it has heard the complete story concerning the committee's deliberations." The trial court's concern regarding the committee members' lack of credibility is particularly troublesome given the subjective criteria considered by the committee. The trial court observed that a subjective procedure may provide a "convenient screen for discriminatory decision making, and must be carefully scrutinized." *Bell v. Bolger,* 708 F.2d 1312, 1319–20 (8th Cir.1983); *Reed v. Arlington Hotel Co.,* 476 F.2d 721, 724 (8th Cir.1973).

**Discussion**

This is a case of first impression in this circuit. It relates to the appropriate standard of causation and the proper allocation of the burden of proof in a Title VII case in which there exists a mixed motive by the employer in reaching its employment decision. The trial court's finding that "race was a discernible factor at the time of the decision" presumes that the case has advanced to the third stage of the *McDonnell-Douglas* model for proof of unlawful discriminatory treatment under Title VII. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). The plaintiff has established a prima facie case of intentional discrimination, and the defendant has produced evidence that the plaintiff "was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. Under *Burdine,* plaintiff now has the opportunity to demonstrate that the proffered

reason was not the true reason for defendant's promotion decision.[1]

▮ Certain well-established principles govern our review of the district court's decision. First, under the teaching of *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Second, as the district court acknowledged, a plaintiff in a disparate treatment action under Title VII need not prove the sole reason for the employment decision was the discrimination; plaintiff need only show race was a "but for" reason. *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493 (1976). The district court also cited *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), which did not involve Title VII but presented the issue whether the exercise of a constitutionally-protected right was the basis for a decision not to hire an untenured teacher. In *Mt. Healthy*, the court adopted a rule of causation, sometimes called the "same decision" test, for cases involving employment decisions based on protected conduct. In such cases, when the plaintiff has shown his protected activity was a "substantial" or "motivating" factor, unlike *Burdine*, the burden shifts and the employer must show by a preponderance of evidence "that it would have reached the same decision * * * even in the absence of the protected conduct." *Id.* at 287, 96 S.Ct. at 2582.

The district court recited the confusion of our own cases and those of other circuits.[2] We also acknowledge that the Supreme Court has not addressed the question of the proper standard of causation in mixed-motive cases under Title VII. The district court resolved the dilemma by finding that "racial considerations probably did play a minor role in the selection process, through the influence of Tresnak, but that plaintiff would not have been selected for the position even if his race had been disregarded." While finding that race was a "discernible factor," the district court found "race was not a determining factor in the decision to promote Laube rather than plaintiff."

▮ At first blush, the "same decision" reasoning is attractive and would require us simply to decide from the record whether the factual finding alone is clearly erroneous. However, when race is shown to have been a discernible factor in the employment decision, as the district court found below, we conclude the same-decision test is inappropriate under the principles of *Burdine*. Here, plaintiff has done more than put forth a prima facie case of discrimination, he has successfully proven that race was a discriminatory factor in his employer's refusal to promote him. Rather than requiring proof that race was a "substantial" or "determining" factor in the decision, we find that a plaintiff proves his claim of unlawful discrimination by showing that "a discriminatory reason more likely [than not] motivated the employer." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. Nothing more is required of a plaintiff to

---

1. In a mixed-motive context such as this, the challenged employment decision presumably was motivated by *both* pretextual (unlawful) and nonpretextual (lawful) reasons. Because "pretext" means that the true reason behind the decision is in fact an unlawful reason, not "partly lawful" and "partly unlawful" as in a dual motive case, some commentators have noted the difficulty of analyzing mixed-motive cases in pretext terms. *See* Brodin, *The Standard of Causation in the Mixed-Motive Title VII Action: A Social Policy Perspective*, 82 Colum.L.Rev. 292, 301 n. 40 (1982) ("the pretext approach is based on an assumption of single-motive decisionmaking").

2. *See Tribble v. Westinghouse Elec. Corp.*, 669 F.2d 1193, 1197 (8th Cir.1982) (determining factor); *Nanty v. Barrows Co.*, 660 F.2d 1327, 1333 (9th Cir.1981) (same-decision test at relief stage); *Williams v. Boorstin*, 663 F.2d 109, 117 (D.C.Cir.1980) (same-decision test at liability stage); *Satz v. ITT Fin. Corp.*, 619 F.2d 738, 746 (8th Cir.1980) (a factor); *Marshall v. Kirkland*, 602 F.2d 1282, 1289 (8th Cir.1979) (motivating factor); *Cleverly v. Western Elec. Co.*, 594 F.2d 638, 641 (8th Cir.1979) (determining factor).

establish liability under Title VII. Once the trier of fact has found that race was a factor influencing the decision, we find it error to attempt to quantify race as a minor factor. Under the factual record presented here, once race was found to be a "discernible factor at the time of the decision," the additional conclusion that it was a minor factor is irrelevant to the Title VII analysis. As stated in *Personnel Administrator v. Feeney*, 442 U.S. 256, 277, 99 S.Ct. 2282, 2295, 60 L.Ed.2d 870 (1979): "Discriminatory intent is simply not amenable to calibration. It either is a factor that has influenced the legislative choice or it is not." [3]

We find it inherently inconsistent to say that race was a discernible factor in the decision, but the same decision would have been made absent racial considerations. Thus, we think that once race is shown to be a causative factor in the employment decision, it is clearly erroneous to find that racial considerations did not affect the outcome of the decision. The analysis could be reversed to say that once it is shown that the same decision would have been made absent racial considerations, then it is clearly erroneous to find that race was a causative factor in the employment decision. However, we affirm the district court's finding that race influenced the employment decision and do so for several reasons. First, a finding that race influenced the decision is required by *Burdine*, whereas the Supreme Court has never sanctioned use of the same-decision test in Title VII cases. Moreover, we find that the record supports a finding that race entered into the decision: the record reveals that Tresnak, who was shown to be racially biased, was the key figure in the promotion decision; the district court found, and we agree, that the selection committee lacked credibility in their testimony regarding the selection process; and the selection procedure was suspect due to its subjective nature. Thus, we reject the unnecessary finding by the district court that "plaintiff would not have been selected for the position even if race had been disregarded," as irrelevant and clearly erroneous.

The language of Title VII itself recognizes the broad purpose of eliminating consideration of race from employment decisions. "Title VII prohibits *all* discrimination in employment based upon race, sex, and national origin. The broad, overriding interest, shared by employer, employee, and consumer, is efficient and trustworthy workmanship assured through fair and ... neutral employment and personnel decisions.' " *Id.* at 259, 101 S.Ct. at 1096 (emphasis added) (citing *McDonnell Douglas*, 411 U.S. at 801, 93 S.Ct. at 1823). As Justice Marshall has stated:

> [I]t is important to bear in mind that Title VII is a remedial statute designed to eradicate certain invidious employment practices. The evils against which it is aimed are defined broadly: "to fail ... to hire or to discharge ... *or otherwise to discriminate* ... with respect to ... compensation, terms, conditions, or privileges of employment," and "to limit, segregate, or classify ... *in any way* which would deprive *or tend to deprive* any individual of employment opportunities *or otherwise adversely affect* his status." 42 U.S.C. § 2000e–2(a) (1970 ed., Supp.V) (emphasis added).

*International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 381, 97 S.Ct. 1843, 1878, 52 L.Ed.2d 396 (1977) (Marshall, J., concurring and dissenting).

■ We find that the trial court erred in requiring plaintiff to prove not only that race was a factor in the employment decision, but to assume the additional burden of proving the hypothetical fact—that he would have been selected for the position if his race had been disregarded. *Cf. Toney v. Block*, 705 F.2d 1364, 1370 n. 3 (D.C.Cir. 1983) (Tamm, J., concurring). The practical

---

**3.** *See also Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977) ("Rarely can it be said that a legislature or administrative body operating under a broad mandate made a decision motivated solely by a single concern, or even that a particular purpose was the 'dominant' or 'primary' one.").

effect of placing the burden on plaintiff to satisfy the *Mt. Healthy* same-decision standard is to require plaintiff to disprove defendant's allegations of its subjective intent. Such an onerous burden is unreasonable in a case in which race has been shown to be a factor in the decision and when the defendant has superior access to proof of its actual motivation.[4] Although proof of actual motivation would be within a defendant's knowledge, we find it inappropriate, under the principles of *Burdine* governing Title VII cases, to follow *Mt. Healthy* and shift the burden to the defendant to show that plaintiff would *not* have been promoted even if his race had not been considered. *See also Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); *Wright Line,* 251 N.L.R.B. 1083 (1980), *enforced,* 662 F.2d 899 (1st Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982) (NLRB adopts the *Mt. Healthy* test to determine liability in § 8(a)(3) cases). *Mt. Healthy* exacts a distinctly different standard relating to recovery and burden of proof in constitutionally-protected conduct cases than does *Burdine* which applied Title VII. This leads then to the *Burdine* conclusion that to establish liability in an individual disparate treatment case under Title VII, plaintiff need only show that racial reasons more likely than not influenced the employment decision. If plaintiff has established this ultimate fact, then he has satisfied the "but for" requirement of *McDonald.*

For the reasons stated above, the judgment for defendant is vacated and the case is remanded to the district court to enter a judgment in favor of plaintiff and to consider the necessary remedy to make plaintiff whole. Costs on appeal are awarded to Bibbs. Counsel for Bibbs is directed to submit a detailed and specific request for attorney's fees for this appeal.

**4.** *Cf. Teamsters,* 431 U.S. at 360 n. 45, 97 S.Ct. at 1867 ("[T]he employer was in the best position to show why any individual employee was denied an employment opportunity. Insofar as the reasons related to available vacancies or the employer's evaluation of the applicant's qualifications, the company's records were the most relevant items of proof. If the refusal to hire was based on other factors, the employer and its agents knew best what those factors were and the extent to which they influenced the decision-making process.").