Linda Lorie SPANIER, Plaintiff,

v.

MORRISON'S MANAGEMENT
SERVICES, a corporation, et
al, Defendants.

Civ. A. No. CV84–PT–1144–S.

United States District Court,
N.D. Alabama, S.D.

June 12, 1985.

Holly Wiseman and James Vann, Markstein, Morris & Liles, Birmingham, Ala., for plaintiff.

Eldridge Lacy, Bradley, Arant, Rose & White, Birmingham, Ala., Cornelius Heusel, Kullman, Inman, Bee & Downing, New Orleans, La., for defendants.

## MEMORANDUM OPINION

PROPST, District Judge.

This cause comes on to be heard on the motion of the Morrison defendants for JNOV or for new trial as to the finding of age discrimination.

There is no chore this court has which is more difficult than determining when an ADEA case is appropriate for jury resolution. By comparison, the resolution of race and sex discrimination cases is easy because if the issue of whether a case which survives a Rule 41(b) motion has been made out is difficult, the determination of the ultimate fact and conclusion moots the 41(b) issue.

The difficulty of deciding whether a directed verdict should be granted in ADEA cases is only exacerbated by a reading of the cases. One only has to compare *Pace v. Southern Railway System*, 701 F.2d 1383 (11th Cir.1983); *Simmons v. McGuffey Nursing Home, Inc.*, 619 F.2d 369 (5th Cir.1980); and similar cases with *Buckley v. Hospital Corp. of America, Inc.*, 758

F.2d 1525 and *Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1435 (11th Cir.1985) to decide that the issue involves a continuum of subjective assessments. The subjective assessment of a jury is subjectively reviewed by the trial court whose assessment is further subjectively reviewed by the appellate courts. One person's reasonable inference may be another person's speculation.

This case is a perfect example of the difficulty. Here we have an employer who says that the employment decisions were based on complaints against the plaintiff of rudeness, insensitivity and improper food preparation. There is substantial evidence to support this position.

On the other hand, the plaintiff argues that the bulk of defendants' arguments involve questions of credibility. Plaintiff points to the fact that she was replaced in various positions by younger managers and was ultimately discharged while defendants retained younger managers. Plaintiff calls attention to her uniform good or excellent performance evaluations.[1] Plaintiff also calls to attention the statistical data and the magical "direct evidence" of discrimination which this court is of the opinion is overweighted by the Eleventh Circuit. Defendants complain of the court's charge with reference to direct evidence. Defendants argue that it is inconsistent with the requirements of *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The court agrees with the defendants in principle but is bound by the Eleventh Circuit holdings in this regard. *See Bell v. B'ham Linen,* 715 F.2d 1552 (11th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984). The court will not take the approach criticized by the Eleventh Circuit in *Jaffree v. Wallace,* 705 F.2d 1526 (11th Cir.1983) but respectfully submits the following with regard to the issue.

In *Lee v. Russell County Board of Education,* 684 F.2d 769 (11th Cir.1982) and its progeny, the Eleventh Circuit has held that a trial court's finding that a statement evidencing a bias was made, is tantamount to "proof" that bias was a substantial motivating factor in the making of a particular employment decision.[2] In *Bell supra,* the court apparently concluded that if the evidence consists of direct testimony that the defendant made a sexually biased statement, and the trier of the fact accepts the testimony, the ultimate issue of discrimination is proved. 715 F.2d at 1557. Apparently credible evidence of a sexual bias is tantamount to proof of "acting" with a discriminatory motive and the element of causation is eliminated. Apparently, the appellate court makes the leap from a discriminatory statement being made to *proving* an illegal motive *was* "a significant or substantial factor in an employment decision." This court has always assumed that direct evidence of bias can be weighed in determining whether a plaintiff has met his or her burden of proving either a prima facie case or pretext. This position was apparently supported by the following language in *Burdine.*

> The plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either *directly* by persuading the court that a discrimina-

---

1. An employer can be damned if it does and damned if it doesn't. If it doesn't give good performance evaluations, it can be claimed that its failure to do so was discriminatory. *See Nord v. United States Steel Corp.,* 758 F.2d 1462 (11th Cir.1985). If it does, the plaintiff usually argues, in spite of intervening events, that the cause must have been discriminatory because "I got good reports."

2. *See,* however, *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). Eleventh Circuit has synthesized the usual Title VII standards (and presumably ADEA standards) with the standards enunciated in *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

ry reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. *See McDonnell-Douglas* [*v. Green* ], 411 U.S. [792], at 804–805 [93 S.Ct. 1817, 1825–26, 36 L.Ed.2d 668 (1973) ]. (emphasis added). Also: "The ultimate burden of persuading the trier of the fact that the defendant intentionally discriminated against the plaintiff *remains at all times* with the plaintiff." 450 U.S. at 252, 101 S.Ct. at 1093. *See also* §§ 50.60 and 50.73(c) Larson, *Employment Discrimination,* Matthew Bender (1983). *See also Pace v. Southern Ry. System,* 701 F.2d 1383, 1388 (11th Cir.1983) where the court, in discussing the *McDonnell-Douglas* standard of proof, stated: "likewise, if there is *direct evidence* of discriminatory intent a *prima facie* case will be established." *See also Loeb v. Textron, Inc.,* 600 F.2d 1003, 1017 (1st Cir.1979). *See also Ramirez v. Sloss,* 615 F.2d 163, 168–169 (5th Cir.1980), where the court held that direct evidence of discrimination established a *prima facie* case. *Ramirez* was decided after *Mt. Healthy.* Although *Ramirez* was decided before the United States Supreme Court decided *Burdine,* which held that the defendant need not rebut by *proving* a valid nondiscriminatory reason, there has been no Supreme Court case which has held that a proof of an age, sexually or racially biased statement shifts the burden of persuasion. Apparently the appellate court held that evidence of such a statement is tantamount to a *finding* that the illegal motive "is *proved*

to have been a substantial or significant factor in the employment decision." This court can see no substantial distinction between a finding of intentional discrimination as contemplated by *McDonnell-Douglas* and a finding of substantial and significant factor as contemplated by *Mt. Healthy.* In *Dickerson v. Metropolitan Dade County,* 659 F.2d 574, 580, (5th Cir. Unit B, 1981), the court states: "In a Title VII disparate treatment suit, the plaintiff *always* retains the burden of proving discrimination by the employer." In this court's opinion, the logic espoused in *Bibbs v. Block,* 749 F.2d 508 (8th Cir.1984) is compelling.[3]

This court's general criticism is that the attempt to synthesize the standards enunciated in *Mt. Healthy* with Title VII standards enunciated in *McDonnel-Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 S.Ct. 668 (1973) and its progeny is incongruous. It appears to be totally illogical to suggest that a court can find that the plaintiff was *the victim of intentional discrimination* which connotes a causal finding and, at the same time, find that the defendant would have taken the same action in the absence of discrimination. The approach appears to be an illogical way to shift the burden of persuasion, presumably definitively allocated in *Burdine, supra.* What appears to be eliminated is the causal factor in connection with direct evidence as it relates to the plaintiff's burden of persuasion. The Eleventh Circuit appears to make the leap, in Title VII cases, that all credible "direct

---

**3.** Rehearing *en banc* is pending in that case. That court stated:

> In *Mt. Healthy,* the court adopted a rule of causation, sometimes called the "same decision" test, for cases involving employment decisions based on protected conduct. In such cases, when the plaintiff has shown his protected activity was a "substantial" or "motivating" factor, unlike *Burdine,* the burden shifts and the employer must show by a preponderance of evidence "that it would have reached the same decision * * * even in the absence of the protected conduct." *Id.* 429 U.S. at 287, 97 S.Ct. at 576.

749 F.2d at 511. Further that:

> As stated in *Personnel Administrator v. Feeney,* 442 U.S. 256, 277, 99 S.Ct. 2282, 2295, 60

L.Ed.2d 870 (1979): "Discriminatory intent is simply not amenable to calibration. It either is a factor that has influenced the legislative choice or it is not."

> We find it inherently inconsistent to say that race was a discernible factor in the decision, but the same decision would have been made absent racial considerations. Thus, we think that once race is shown to be a causative factor in the employment decision, it is clearly erroneous to find that racial considerations did not affect the outcome of the decision. The analysis could be reversed to say that once it is shown that the same decision would have been made absent racial considerations, then it is clearly erroneous to find that race was a causative factor in the employment decision. 749 F.2d at 512.

evidence" of discrimination is proof of a substantial motivating factor.

The difficulty created by the *Mt. Healthy* approach is made vivid by this case. On the one hand, the jury is instructed that the burden of persuasion or proof is on the plaintiff. On the other hand, they are instructed that, when there is direct evidence, the burden shifts to the defendant. Thus direct evidence is given inordinate weight and the jury cannot help but be confused.[4] These gratuitous and somewhat churlish comments are offered for whatever questionable value they may have.

■ The fact that there was present, in this case, "direct evidence" of discrimination which shifted the burden of persuasion to defendants coupled with proof of a prima facie case would appear to require this court to deny defendants' motion.[5] Plaintiff appears to have satisfied all four prongs of a prima facie case. She was obviously a member of the protected group. She was discharged, and prior to her discharge, she was not placed in available manager positions; she was arguably replaced by, or defendants filled positions she was qualified for, with persons outside the protected group; and she was certainly minimally or facially qualified for the positions. She offered proof of good evaluation reports as a food manager. *Apparently Pace, supra,* requires other evidence creating a reasonable inference only when

the usual *prima facie* case is not made out under *McDonnell-Douglas* standards.

The motion will be denied as to the finding of age discrimination. *See Boeing Company v. Shipman,* 411 F.2d 365 (5th Cir.1969).

### Liquidated Damages

This cause also comes on to be heard by the court for further consideration of whether liquidated damages should be added to the jury verdict. Defendants' motion for JNOV is also addressed to that issue.

I am a tool user, not a tool maker. Congress and the Supreme Court in their wisdom have apparently determined that the transposed provisions of 29 U.S.C. § 216(b) are reasonably applicable to age discrimination cases. I respectfully disagree. Wage and hour cases are subject to reasonably objective standards, consideration, and determination. All except extreme and obvious age discrimination cases involve only amorphous standards, invoke an inate sympathy and because of their jury appeal have become the most recent cynosure of the bar.[6] They can have an obvious chilling effect on business decisions which impact on any person within a wide range age group.[7] Usually, a subtle or overt appeal is made to the jury's sense of "fairness." Only the most discerning jury can distinguish between a lack of "fairness" and

---

4. This court has repeatedly charged juries that the law makes no distinction between the weight to be given direct and circumstantial evidence. *See* Eleventh Circuit Pattern Criminal Charge 4.2. *See* Fifth Circuit Pattern Criminal Charge 5.

5. There is a real question as to whether the "direct evidence" of discrimination in this case was *strong* evidence. See *Lee, supra.*

6. When all a plaintiff substantiantially has to prove is that he is within the protected age group, that there has been an adverse employment decision, that he has been replaced by a person outside the protected age group and that he was minimally qualified for the position, the possibility for sympathy verdicts is significant. *See Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1435 (11th Cir.1985). Denials by plaintiff

of the defendant's articulated reasons are usually sufficient to defeat a motion for JNOV if a prima facie case has been proved.

7. This case is an example. It is unlikely that anyone can reasonably determine, other than by at least a partially subjective analysis, whether the defendant(s) made a reasonable business decision or discriminated because of age. The application of such standards that this court has been provided, however, has led to the conclusion that a jury issue was created. There is a myth in the law that once an issue is decided via the application of available standards, it has been decided absolutely correctly. There seems to be little support for the reasonable argument that if the liability issue is incapable of reasonably *certain* resolution, the remedy should not be beyond what is necessary to reasonably compensate.

discrimination. All jurors are either old or expect to be old. Most are employees.[8]

To the possible wounds of injustices which can result from largely subjective assessments is added the salt of liquidated damages. This can, in a totally illogical manner, be affected by how long it takes a case to reach trial; a matter which defendants often have no control over. A plaintiff who makes $20,000.00 per year may receive a bonus of $10,000.00 if his case is tried within six months; an $80,000.00 bonus if his case is tried in four years. No reasonable standards have been provided by Congress or the appellate court by which trial courts may adjust for such an inanity.

The standard by which trial courts are to determine when to consider assessing liquidated damages is basically senseless. The Supreme Court's "clarification" in *Trans World Airlines, Inc. v. Thurston,* —— U.S. ——, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) is of little help if it is to be interpreted as plaintiff suggests.[9] Under what circumstances can an act of "intentional" discrimination be other than the product of willfulness? It is only another example of how trial courts are expected to rationally apply what appear to be irrational standards. I would hold the liquidated damages provisions, as applied to age discrimination cases, to be unconstitutional as de-

nying due process because of vagueness and indefiniteness. The trend is to interpret vague and indefinite provisions "liberally" because of their "remedial" purpose.[10] Judges who question the issue are subject to being accused of insensitivity. I have frankly discussed the issue so that all will be fully informed of my concerns. I am of the opinion that I would be derelict if I did not express my concerns about the feasibility of determining whether liquidated damages should be added. If the tools I am required to use are defective, I have a duty to call attention to the defect. No clear objective standards have been provided to distinguish between instances when liquidated damages should be added and when they should not. The adding of such damages is consistent with the "casino" air which pervades our courts in the area of punitive damages, mental anguish, treble damages, etc.

Assuming that the provision is constitutional, the intent of Congress can only be that liquidated damages are not recoverable except when some aggravated circumstances, in addition to basic evidence of intentional discrimination, are present.[11] I hold that if the only evidence in support of the claim of willfulness is that which is necessary to support the underlying claim of age discrimination, liquidated damages are not recoverable. It is ridiculous to

**8.** The court was not blind to the entourage of companions which gathered behind plaintiff to demonstrate support for her cause and who allegedly exchanged pleasantries with jurors. Those seeking fairness in decisions by employers are not always totally fair in seeking decisions in employment discrimination cases. See attached article in June 1985 issue of TRIAL which mentions that the plaintiff "has a good chance to gain sympathy from a jury." The article also encourages arguments about the "unfairness" of firing someone "who has devoted years to a company."

**9.** "[A] violation is 'willful' if employer either knew or showed reckless disregard for the matter of whether *its conduct* was prohibited by the ADEA." (emphasis added). *Id.* at 625. Plaintiff argues that this simply means that the de-

fendant be aware that the ADEA prohibits age discrimination. How can anyone say that they did not know that intentional age discrimination is prohibited by the ADEA?

**10.** The mere fact that Congress assumed that the same standard applicable to wage and hour cases, which involve no issue of discrimination, is automatically applicable to age *discrimination* cases makes the provision highly suspect with regard to ADEA cases. Congress has apparently successfully mixed "apples and oranges."

**11.** *Cf. Bourque v. Powell Electric Mfg. Co.,* 617 F.2d 61, 66 (5th Cir.1980); *Pittman v. Hattiesburg Municipal Separate School District,* 644 F.2d 1071 (5th Cir.1981). *Lincoln v. Board of Regents of Univ. System of Ga.,* 697 F.2d 928 (11th Cir.1983).

make the issue turn on whether the jury determines that the defendant had knowledge of the provisions of the ADEA.[12]

 Surely the Supreme Court must mean that willfulness means more than just whether the defendant knew that there was an ADEA and that it precluded age discrimination and that thereafter the defendant was guilty of discrimination. If this were the case, the determining factor would be whether the defendant knew of the existence of the ADEA. That would be an asinine criterion. Undoubtedly the Supreme Court meant that the test is whether the defendant *knew* that its very conduct made the basis of the claim in this case was in violation of the ADEA or that it acted in reckless disregard of the ADEA. In this case, there was no evidence, other than the evidence which may support the claim of discrimination, that would support a finding of such knowledge or reckless disregard. Undoubtedly some evidence in addition to a bare bones discrimination case is necessary. *See Berndt v. Kaiser Aluminum & Chemical Sales, Inc.,* 604 F.Supp. 962 (E.D.Pa.1985). I construe "willful" to require some evidence of a defiant attitude, not present in this case. An employer who has been clearly informed that certain employees are entitled to time and a half for overtime and proceeds to pay straight time may clearly act willfully. An employer who must continuously make business judgments with regard to employee performance has no such totally objective basis for making a decision.

The issue is further muddled by the holding in *Hedrick v. Hercules, Inc.,* 658 F.2d 1088 (5th Cir., Unit B 1981). In *Hedrick,* a jury found the defendant guilty of age discrimination. It is not clear in *Hedrick* whether the jury, or the judge, made the finding of a willful violation. *Hedrick* further muddles the issue by creating the anomalous situation wherein not only may an intentional act of discrimination be or not be a willful violation, but also wherein an intentional act of discrimination, which is a willful violation, may be or may not be done in good faith. *Hedrick* holds that a good faith effort to comply with the ADEA through the establishment of guidelines can cause a reduction in or elimination of liquidated damages.

While this court will grant JNOV as to the liquidated damages claim, it will also conduct a hearing as to the "good faith" issue so that all matters related to liquidated damages may be considered and decided.

---

**12.** A defendant who said he had no such knowledge would likely be subject to an argument that his lack of knowledge caused him to violate the Act. On the other hand that if he knew of the Act, his actions were "willful".