**Linda Lorie SPANIER,**
**Plaintiff-Appellant,**
**Cross-Appellee,**

v.

**MORRISON'S MANAGEMENT SERVICES, INC., a corporation; Morrison, Inc., a corporation, Defendants-Appellees, Cross-Appellants.**

**No. 85–7562.**

United States Court of Appeals, Eleventh Circuit.

July 24, 1987.

Holly L. Wiseman, Markstein, Morris & Liles, Birmingham, Ala., for plaintiff-appellant, cross-appellee.

Cornelius R. Heusel, Kullman, Inman, Bee & Downing, New Orleans, La., Eldridge D. Lacy, Bradley, Arant, Rose & White, Birmingham, Ala., for defendants-appellees, cross-appellants.

Before GODBOLD, and HILL, Circuit Judges, and LYNNE\*, Senior District Judge.

GODBOLD, Circuit Judge:

This is an age discrimination suit.[1] A jury found that Morrison's had willfully violated the Age Discrimination in Employ-

---

\* Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Spanier's complaint also alleged sex discrimination. This count was tried to the court, which found for Morrison's. *See Spanier v. Morrison's Management Servs.*, 611 F.Supp. 642 (N.D.Ala.1985). Spanier does not question this finding.

ment Act (ADEA), 29 U.S.C. § 621 et seq., and awarded damages. Morrison's moved for judgment n.o.v. and a new trial. The district court granted Morrison's motion for judgment n.o.v. as to the finding of willfulness, thus rendering Spanier ineligible for statutory double damages, and in the alternative found that Morrison's had acted in good faith and on that ground reduced the statutorily doubled damage award by half. Morrison's motion was denied in all other respects. Spanier appeals and questions the granting of this motion. Morrison's cross-appeal challenges the ruling to the extent that its motion was denied. We reverse on the appeal and affirm on the cross-appeal.

## I. Facts

In 1974 Lorie Spanier was hired as an assistant manager by Morrison's Management Services, Inc., which provides management services for cafeterias maintained by institutions such as hospitals and factories. At that time Spanier was 48 years old and had over 15 years experience in the food-services industry. Previously she had held a similar position with another company. Spanier was soon promoted to a position as manager and worked in that capacity at a number of facilities over the next several years.

In 1976 Spanier was assigned to manage a cafeteria and box lunch program at the U.S. Steel plant in Fairfield, Alabama. Although initially she was successful in making the operation profitable, an economic downturn in the area caused business to diminish steadily in 1979 and 1980. To counteract the loss of business at that site Morrison's established an Alabama Commission on Aging ("ACOA") Meals-on-Wheels central kitchen there in 1981. Spanier was put in charge. Although the position required her to work much longer hours she continued to receive excellent performance evaluations and yearly bonuses and merit pay increases. In August 1982, a year and a half after taking on the ACOA program in addition to her duties at the U.S. Steel cafeteria, she received a performance rating of 100% on the ACOA program and 90% on the cafeteria program.

In 1983 Spanier was persuaded by her supervisor to transfer to the Morrison's operation at Brookwood Lodge, an alcohol and drug rehabilitation center, to work at an increased salary. Her replacement at U.S. Steel was her assistant manager, a 46 year old. Several months later that person was replaced by a 26 year old. Spanier was then 58.

At trial employees of Morrison's testified that Spanier was transferred because of complaints about her performance that were received from the state agency for which Morrison's managed the ACOA facility. Complaints were also received, however, about all of the ACOA kitchens, and none of the complaints about Spanier was noted on her performance evaluations.

After Spanier had spent two months working at Brookwood Lodge the director asked that Spanier be replaced. When Spanier's supervisor told her that she would have to leave Brookwood he explained that the director there preferred male managers and assured her that her removal was not based on her performance. Spanier was replaced at Brookwood by a 23 year old. The assistant manager who had supervised her, Roy Ramsey, was 27 years old. At trial Ramsey testified that he had asked that Spanier be replaced because of her job performance. Ramsey did not inform Spanier, however, of his concerns about her performance or about the complaints he said he had received from patients at Brookwood.

After leaving Brookwood Spanier was placed on "unassigned status." She never again held a managerial position. She was transferred from facility to facility for several months, and her annual pay was cut from $20,000 to $18,500. One manager under whom she worked told Spanier that he had been asked to evaluate her performance because Morrison's wanted to get rid of her, and that he thought that she was being wronged. Tr. at 187.

After 10 months on unassigned status Spanier was asked by her supervisor to resign. Although formerly she had been told that she had not been reassigned be-

cause no openings had been available, on this occasion she was told that Morrison's needed "younger people that were more qualified." Tr. at 215. When Spanier refused to resign or retire she was fired.

The evidence at trial showed that during the 10 months that Spanier was unassigned there were 12 managerial openings in her district. Spanier was qualified for five of these, but all five were filled with younger, less experienced employees. Morrison's contends that it filled each of these five positions with someone other than Spanier for legitimate reasons other than Spanier's age.

At the conclusion of trial the jury returned a general verdict for Spanier and answered special interrogatories. The special interrogatories included the following: "Did you find from a preponderance of the evidence that plaintiff's termination resulted from age discrimination by the defendants?" The jury answered in the affirmative. The jury also found by special interrogatory that the age discrimination by Morrison's was a willful violation of the ADEA. The jury set damages for lost wages and benefits at $25,895.

Morrison's then moved for judgment n.o.v. or a new trial. The district court granted the motion for judgment n.o.v. only as to the jury's finding of willfulness and made an alternative finding that Morrison's had acted in good faith. The district court thus refused to award the liquidated "double damages" due under section 626(b) of the ADEA. Spanier appealed and Morrison's filed a cross-appeal.

## II. Issues on Appeal

Spanier contends that the district court erred in granting Morrison's motion for

judgment n.o.v. on the issue of liquidated damages. We agree.

The ADEA provides for liquidated damage awards when an employer "willfully" violates the Act. 29 U.S.C. § 626(b). In *TransWorld Air Lines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), the Supreme Court approved a definition of willful which states that a violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Id.* at 128, 105 S.Ct. at 625. Despite difficulties in application of this standard, this circuit has forthrightly adopted the standard. *See Reynolds v. CLP Corp.*, 812 F.2d 671, 675 (11th Cir. 1987); *Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094, 1100 (11th Cir. 1987) (rejecting a Third Circuit case requiring "outrageous" conduct). The jury charge in the instant case comported with this definition,[2] and the jury found willfulness.

■ After reviewing the record in the light most favorable to Spanier, we conclude that judgment n.o.v. was not warranted. As this court did in *Reynolds*, we "conclude that there was substantial evidence of such quality and weight that fair-minded jurors, exercising impartial judgment, could reasonably have concluded" that Morrison's termination of Spanier resulted from age discrimination and that Morrison's either knew that this action was unlawful or showed reckless disregard for whether its action was prohibited by the Age Discrimination in Employment Act. *See* 812 F.2d at 675.

The evidence in this case shows the following. Spanier had a splendid job record. She was replaced at Brookwood Lodge by a 23 year old person and was told that the

2. The charge included the following:
What determines whether or not an employer willfully violated the Act is determined by whether the employer knew, or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA, or Age Discrimination in Employment Act.
If the employer knew, or showed reckless disregard for the matter of whether its conduct was prohibited by the Age Discrimina-

tion in Employment Act, its actions, if they were guilty of age discrimination, would be willful.
If they did not know or did not show reckless disregard for the matter of whether its conduct was prohibited by the Age Discrimination in Employment Act, their conduct would not be willful.
Trial Transcript at 458.

director at Brookwood preferred male managers and that her removal was not based on her performance. One manager under whom she had worked told her that he had been asked to evaluate her performance because Morrison's wanted to get rid of her and that he thought she was being wronged. When she was asked to resign she was told that no openings had been available when in fact there had been 12 openings, five of which she was qualified for, and these five were filled with younger and less experienced employees. When she was asked to resign or retire she was told that Morrison's needed "younger people that were more qualified." This evidence is adequate to support the jury's finding of willfulness. Because there was sufficient evidence to create a jury issue as to willfulness, it was error for the district court to refuse to double Spanier's damages as provided by § 626(b).

█ In addition to the judgment n.o.v. on the issue of liquidated damages, the district court held in the alternative that the liquidated damages should be reduced by one-half. Prior to the decision in *Thurston* the law of this circuit gave the district court discretion to reduce a liquidated ADEA damage award if it found that the defendant had acted in good faith. *See Hedrick v. Hercules*, 658 F.2d 1088 (5th Cir. Unit B 1981); *Hays v. Republic Steel Corp.*, 531 F.2d 1307 (5th Cir.1976). This discretion counterbalanced the breadth of this court's definition of "willfulness" under the ADEA. *See Elliott v. Group Med. & Surg. Serv.*, 714 F.2d 556, 558 n. 2 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984). *Thurston* disapproved this court's definition of willfulness and, by implication, disapproved the discretion that this court had vested in district courts to reduce the liquidated damages award on a finding of good faith. We hold that the existence of a jury issue of willfulness under the *Thurston* standard divests the district court of discretion to reduce an ADEA liquidated damages award. On remand Spanier's damages must be doubled.

### III. Issues on Cross-Appeal

Morrison's contends that its motion for new trial should have been granted because the jury was improperly instructed as to the burdens of proof. It also contends that its motion for judgment n.o.v. should have been granted as to liability.

### A. Jury Instruction

The jury was charged that Spanier had to show by a preponderance of the evidence that her age was a determining factor in Morrison's decision to discharge her. The jury was also instructed that, even if Spanier carried her burden of proof, the verdict should be for Morrison's if Morrison's showed by a preponderance of the evidence that it would have discharged Spanier even if it had not discriminated on the basis of age. *See Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 285–87, 97 S.Ct. 568, 575–76, 50 L.Ed.2d 471 (1977).[3]

Morrison's contention is twofold. First, Morrison's contends that it was error to give the *Mt. Healthy* charge without informing the jury to ignore that portion of the charge unless it first found discrimination on the basis of credible, direct evidence. Secondly, Morrison's argues that even if it was proper to give the *Mt. Healthy* instruction the court gave it in such a way that the jury was confused as to which party was to bear the burden of proof as to Spanier's case-in-chief.

█ Morrison's first point assumes that a *Mt. Healthy* defense is available only where the jury has based its finding of discrimination on direct evidence alone.

---

**3.** Although the *Mt. Healthy* defense originated in a first amendment case, it has been applied in Title VII cases, *see, e.g., Lee v. Russell County Bd. of Educ.*, 684 F.2d 769 (11th Cir.1983). The affinity between Title VII and the ADEA has been noted, *see, e.g., Lorillard v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978); *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 735 (5th Cir.1977), *overruled in part on other grounds, Brown v. A.J. Gerrard Mfg. Co.*, 715 F.2d 1549 (11th Cir.1983) (en banc), and no reason appears why a *Mt. Healthy* defense should not be available in an ADEA case. *Accord Smallwood v. United Air Lines, Inc.*, 728 F.2d 614, 618–20 (4th Cir.), *cert. denied*, 469 U.S. 832, 105 S.Ct. 120, 83 L.Ed.2d 62 (1984).

This assumption is unwarranted. Such a rule would irrationally penalize defendants whose discrimination has been shown by circumstantial evidence.[4]

■ Morrison's second point is based on an apprehension that the jury may be confused by a charge that combines an instruction on the burden shifting structure derived from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) with an instruction on the *Mt. Healthy* defense. The apprehension is that the jury might confuse the role of nondiscriminatory reasons articulated at the second stage of the *McDonnell Douglas* analysis with the role those reasons play in a *Mt. Healthy* defense. As to the first, the defendant bears only a burden of production, as to the second a burden of persuasion.[5]

Morrison's apprehension is misplaced. The record reveals that the jury charge did not include an instruction to analyze the evidence according to the *McDonnell Douglas* scheme. This omission was proper, for

> When the court has allowed both parties to develop their full proof, the analysis of the evidence should look to whether plaintiff has met the ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination. [citation omitted]. In such a case, neither the trial court nor this court need parse the evidence in accordance with the ebb and flow of shifting [*McDonnell Douglas*] burdens.

*Smith v. Farah Mfg. Co.*, 650 F.2d 64, 68 (5th Cir.1981). Still less should a jury be put to such a task. *See Krieg v. Paul*

*Revere Life Ins. Co.*, 718 F.2d 998, 999 (11th Cir.1983).

The record shows that there was little danger that the jury might have misunderstood the placement of the burden of proof as to Spanier's case-in-chief. The court charged the jury no fewer than 11 times that Spanier had to show by a preponderance of the evidence that age was a determining factor in Morrison's decision to terminate her. The instruction as to the *Mt. Healthy* defense was sufficiently distinct and precise to prevent confusion.

### B.  Judgment N.O.V.

Morrison's contends that its motion for judgment n.o.v. should have been granted both as to Spanier's case-in-chief and as to its own *Mt. Healthy* rebuttal.

### 1.  Case-in-Chief

Morrison's contends that the district court erred in denying, on grounds of *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769 (11th Cir.1982), its motion for judgment n.o.v. *Lee* states that the *McDonnell Douglas* structure need not be followed where the ultimate issue of discrimination is proved by credible, direct evidence. *Lee* does not state what standard is to be applied to determine whether the issue of discrimination may be decided by the jury. The propriety of granting a motion for judgment n.o.v. is determined according to the standard announced in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969) (en banc). According to *Boeing* a motion for judgment n.o.v. must be denied unless the quality and weight of all the evidence—"in the light and with all reasonable inferences

---

4. The record does not reveal which party requested the *Mt. Healthy* instruction in the first instance. It is possible that a defendant might decide as a tactical matter to forego a *Mt. Healthy* defense. We express no view as to whether such a tactical calculation would provide defendant a good ground for objecting to the giving of a *Mt. Healthy* charge.

5. There is another difference that should be noted. In the *McDonnell Douglas* context these reasons serve to suggest the *absence* of discriminatory motive. In the *Mt. Healthy* context—in which a discriminatory motive has already been found to have been a determining factor—these

same reasons may serve to show that there was a *mixture* of legal and illegal motives and that the legal motives standing alone would have brought about the plaintiff's dismissal. *See NLRB v. Transportation Management Corp.*, 462 U.S. 393, 400 n. 5, 103 S.Ct. 2469, 2473 n. 5, 76 L.Ed.2d 667 (1983). By allowing a defendant to avoid liability even though his illegal motive was a substantial factor in causing injury, *Mt. Healthy* provides a defense that has no analogue in the law of torts. *Compare Mt. Healthy*, 429 U.S. at 285, 97 S.Ct. at 575, *with* Restatement (Second) of Torts § 432.

most favorable" to the non-movant—is such that "reasonable and fair-minded" jurors in the exercise of "impartial judgment" could not reach a verdict in favor of the non-movant. We find that the evidence in this case was properly submitted to the jury and that the district court did not err in denying Morrison's motion for judgment n.o.v.

### 2. *Mt. Healthy* Defense

█ Morrison's contends that it was entitled to judgment n.o.v. on the basis of its *Mt. Healthy* defense. We disagree. Morrison's evidence of mixed motivation was not so strong that a "reasonable and fair-minded" jury could not conclude that Morrison's would not have discharged Spanier in any event for legitimate, non-discriminatory reasons. *Boeing.*

AFFIRMED in part, REVERSED in part and REMANDED with instructions.

HILL, Circuit Judge, concurring:

I concur in the judgment affirming the judgment of the district court. However, I write separately to express my concern with the lack of direction that Congress has given to the judiciary regarding the imposition of liquidated damages under section 626(b) of the ADEA.

To prove any violation of the ADEA, the individual plaintiff must show that the defendant *intentionally* discriminated on *the basis of the plaintiff's age.* The motive for the action must be the age of the employee/plaintiff. Yet, Congress has stated that liquidated damages are to be awarded only where a violation of the Act is "willful." An intentional act is, by any reasonable interpretation of the word, a "willful" act. Thus, in practically all ADEA cases, a plaintiff with a meritorious claim will show that the defendant acted "willfully."

The Supreme Court has ascertained that Congress did intend to establish a two-tier damage arrangement under the ADEA. In *Trans World Airlines, Inc. v. Thurston,*

469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), the Court indicated that, in certain cases, a distinction could be made between intentional acts and willful acts. The court held that where an employer adopts a program which adversely impacts employees because of their relatively advanced age, sincerely believing, as a result of responsible research and inquiry, that the policy is not prohibited by the ADEA, then the willful implementation of such a program, though potentially violative of the Act, is not "willful" conduct justifying an award of liquidated or punitive damages under section 626(b).

It thus appears one can, at least in disparate impact cases, differentiate intentional discrimination from willful discrimination. However, the type of personnel program challenged in the *Thurston* case will rarely appear in court. The usual ADEA case involves an employer whose discrete personnel actions are directed at one employee. Generally, the only issue presented is whether the action (failure to promote or dismissal) was taken because of the plaintiff's age or for an innocent reason. It is difficult to imagine a finding that an employer's action against an employee, taken on account of his or her age, violates the ADEA but is somehow not a "willful" violation. As we noted in *Lindsey v. American Cast Iron Pipe Co.,* 810 F.2d 1094, 1100 (11th Cir.1987), "there is no logical way to square a finding of intentional discrimination with a finding of good faith on the employer's part."

In studying the ADEA and cases brought under it, I have concluded that where a defendant loses a typical case, the employer has necessarily been found guilty of a willful violation of the ADEA, and liquidated damages are required. Disparate impact cases such as *Thurston* are the only conceivable exception. If this result is not what Congress intended, then that branch of the government must alter the language of the ADEA.[1] Given the plain

---

**1.** It is perhaps not inappropriate to observe that persons discriminated against on account of age have a better remedy, by virtue of § 626(b) of the ADEA, than those discriminated against on account of race, sex, or religion who seek relief under 42 U.S.C. § 2000e et seq. ("Title VII"). Section 2000e–5 of that statute does not authorize an award of punitive damages. *Richerson*

meaning of the language used in § 626(b), I see only one way to apply it. I therefore join in affirming the district court.

LYNNE, Senior District Judge, concurring:

I concur and add only a few words for my fellow laborers in the trenches. Not every violation of the ADEA will meet the *Thurston* standard of willfulness, which this circuit has forthrightly adopted, and require the submission of such issue to a jury. By applying the ubiquitous *Boeing* test to the evidence the Court may be constrained to grant a motion for a directed verdict in a jury trial, or a motion to dismiss in a bench trial. It is crystal clear that the plaintiff employee bears the burden of satisfying the fact finder by a preponderance of the evidence that in terminating or demoting him or her the defendant employer acted in reckless disregard of the requirements of the ADEA in order to recover liquidated damages.

Unfortunately, it is manifestly impossible to formulate for the guidance of the lower courts a suggestion as to what evidence, qualitatively or quantitatively, will satisfy the *Thurston* standard. That is a familiar task for the Court on a case by case basis.

Unless the Congress sees fit to ameliorate the harshness of the rule which mandates the award of punitive damages on a finding of willfulness * without regard to the enormity of the wrong, double damages must be awarded. *See* note 22 to *Thurston,* 469 U.S. at 128, 105 S.Ct. at 625.

---

* v. Jones, 551 F.2d 918 (3rd Cir.1977); *White v. Washington Public Power Supply System,* 692 F.2d 1286 (9th Cir.1982).

* If the issue of willfulness is submitted to a jury on a special interrogatory, the following wording is suggested: Do you find from a preponderance of the evidence that in (demoting) (terminating) plaintiff the defendant acted in reckless disregard of the requirements of the ADEA?